**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  06a0466n.06**
**Filed:  July 3, 2006**

**No. 05-3834**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KAREN MARTIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GENERAL ELECTRIC COMPANY, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

**Before:  MARTIN, MOORE, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.**  Plaintiff Karen Martin works at a General Electric (GE) plant as a Coating and Finishing Mechanic.  In this litigation, she has asserted three related claims:  she was denied overtime because of her sex, various forms of training because of her sex, and a promotion because she filed a grievance with the EEOC.  The district court, in one order, entered summary judgment in favor of GE as to all of her claims and, in another order, imposed sanctions on Martin's counsel for filing a frivolous motion to alter or amend.  Martin now challenges both orders.  We affirm the order of the district court granting GE summary judgment.  We dismiss, for lack of jurisdiction, Martin's challenge to the order imposing sanctions because Martin failed to identify the order imposing sanctions in her notice of appeal.  We also deny Martin's December 5, 2005, motion requesting that this court take judicial notice of evidence not in the lower court record.

**I.**

Martin worked at GE's Euclid Lamp Plant in Cleveland, Ohio since 1979. Martin was promoted in 1997 to work as a Coating and Finishing Mechanic in the Coating Department. She worked the second shift. Employees in her department were required to run two machines relevant to this case, the Aluminizer and the Grit Blast. When Martin first began working in the department, the Aluminizer was operated during both the first and second shifts, but the Grit Blast was operated only during the second shift.

At the time that Martin was promoted, her job was classified for pay purposes as R-22. Higher numbered classifications correspond to higher rates of pay. Sometime later Martin's position was reclassified as R-21 when GE decided to create a group-leader position. Michael Wilson was promoted to group leader, which is classified as R-23, and his job duties included overseeing "the components area which includes the grit blast operation, almunizing operation, flare room, [and] base fill." JA 112 (Dep. of M. Wilson). Although Martin's position was reclassified, she was permitted to retain her better salary classification of R-22.

As part of the reclassification, GE created a new job description for Martin's position so that anyone holding that position after Martin would perform only Grit Blast duties. Because there was less demand for the Aluminizer, GE also changed the Aluminizer schedule so that it operated only during the first shift by R-11 employees. Martin, as a second-shift employee, no longer operated

the Aluminizer.

### 1.      Overtime

The history concerning GE's staffing of the Grit Blast operation is not clear in the record. As the district court stated, "Neither party has effectively developed the record regarding the staffing of GE's Grit Blast operation." JA 25. It appears that after Martin began working in the Grit Blast Operation, GE added a first-shift position, but GE eliminated this position in January 2001.[1] However, at some point later in 2001, GE reestablished a first-shift position for Grit Blast. GE asserts that it added another shift because of increased demand. GE had two first-shift employees, Jim Horner and Isaac Flowers, rotate in three-month intervals between the Flare Room and the Grit Blast. Group leader Wilson declared in his affidavit that the two men rotated so GE did not have to lay off one of the men. Ultimately, however, GE laid off Horner, who had less seniority than Flowers. Martin relies upon Horner's and Flowers' depositions in this litigation.

In September 2001, GE rehired Harold Canterbury. Canterbury, who had previously worked in the Bulb Blowing Department, understood that he was to work as a "floating" mechanic among the Grist Blast, Flare Room, and Bulb Blowing operations. Canterbury worked 235 hours of overtime in 2002.[2]

---

[1]Martin alleges that, after she returned from medical leave in September 2000, "she was denied overtime work hours in the Grit Blast area and said hours were taken by Mike Wilson . . . ." Martin's Br. at 4. It is unclear to us how this fits into the record.

[2]Martin alleges in her brief that "Canterbury's placement in the first shift Grit Blast position allowed him to work a full eight hour shift in Grit Blast, and then proceed to other departments for

The parties agree that in July 2002 Martin was told not to report to work. Martin alleges that she was told that there was no work for her. One of the GE supervisors testified in his deposition that Martin was told not to report to work either because the machine was down or because there was no work. Martin believed that the lack of work was due to Canterbury's working the first shift, so the union filed a grievance on her behalf.

2.      *Training*

In June 2002, the union filed a grievance on Martin's behalf on the ground that she had not received training to operate the Aluminizer. GE agreed to train her on the Aluminizer. Martin states in her brief that the training never materialized, but her affidavit, to which she refers, does not say that GE did not train her. Wilson declared in his affidavit that he trained Martin before work for two hours a day during the fall of 2002.

Martin also asked GE to train her in the Flare Room. Wilson declared in his affidavit that operating the Flare Room was outside Martin's classification and occurred during the first shift. Martin testified in her deposition, however, that Wilson told another supervisor that "those jobs" were Wilson's and thus that Martin could not be trained for those jobs. Martin filed a complaint

---

overtime work." Martin's Br. at 6. The page in the record to which Martin refers for support states only that Canterbury was hired and contains hypothetical questions posed by counsel as to overtime that Martin may or may not have worked before Canterbury was hired. It does not say that Canterbury worked overtime in other departments. Martin also alleges that Canterbury was paid at an R-22 rate, although he was an R-21 employee. Martin's Br. at 6. Although she refers generally to Canterbury's deposition for support in the record, the portion of the deposition in the Joint Appendix does not state that he was paid at an R-22 rate.

with the EEOC in late October 2002, and the EEOC issued a "right to sue" letter. In the EEOC complaint, Martin alleged that she had been denied training opportunities and, as a result, overtime.

### 3. Promotion

Martin applied for a promotion as a group leader in the 9007 department, which is devoted to manufacturing a particular type of automotive lamp, in September 2003. GE must complete regular, substantial audits of the 9007 department to retain a certain industry certification. Kelly Wacenske was responsible for hiring the new group leader. According to Wacenske, GE did not want to train the soon-to-be group leader, so it sought employees with prior experience in 9007. The Union demanded, however, that GE interview all interested employees. In response, GE created a matrix that assigned a point value to each candidate in the following areas: prior experience in the 9007 department, seniority, supervisory experience, auditing experience, and the interview.

On October 6, 2003, Tom Mazza, a Caucasian, male employee junior to Martin, received the highest matrix score, and GE awarded him the job. Mazza received a score of 24, while Martin received a score of only 10. Mazza had both experience in 9007 and supervisory experience. Martin had never worked in the 9007 department.

When speaking generally about Martin's aptitude to serve as a group leader, Michael Orloski, presumably a co-worker of Martin's, stated that she had the qualifications to be a group leader. Arif Rachmat, who Martin asserts in her brief was a manager, stated that Martin was "definitely" qualified to apply, but, when asked for which kind of group-leader position Martin

would have been qualified, he answered that "it would be pure speculation to answer that question."

JA 218 (Dep. of A. Rachmat). Martin points out that Horner testified that it "seemed to [him] the

person with the most seniority would get the job." JA 237 (Dep. of J. Horner). But he also

admitted, "I don't really know people's seniority." JA 237 (Dep. of J. Horner). Flowers stated that

hiring decisions are *not* based on seniority, but he also admitted that he did not know how the hiring

process worked.

### 4. Procedural History

Martin filed her complaint in 2003 in Ohio state court. Martin asserted state-law claims for

sex and race discrimination and retaliation. GE removed the case to federal court in early 2004 and

invoked the federal court's diversity jurisdiction. In February 2005, GE filed a motion for summary

judgment. Martin voluntarily dismissed her claims for race discrimination. The district court

granted GE's motion on all claims in a thorough nineteen-page opinion. The district court filed its

order on May 9, 2005.

Martin then filed a "motion for reconsideration" with an attached memorandum on May 19,

2005. GE opposed the motion and sought costs and, under 28 U.S.C. § 1927, sanctions. The district

court denied Martin's motion for reconsideration and awarded costs and sanctions to GE.

Approximately ten days later, Martin filed a "response" to GE's motion for costs and sanctions. The

district court, however, chose not to revisit the issue of whether sanctions were proper. Instead, the

district court permitted Martin to file a response concerning the amount of sanctions. Martin

(re)filed, however, her response to GE's motion for summary judgment, which, as the district court stated, "had nothing to do with the appropriate amount of sanctions awarded . . . ." JA 348. The district court imposed sanctions against Martin's counsel in the amount of $1,891.07 on July 25, 2005.

Martin filed a notice of appeal on June 2, 2005, over six weeks before the district court entered its order concerning sanctions. The notice identified the district court's May 6, 2005 order granting GE's motion for summary judgement. On December 5, 2005, Martin filed a motion requesting that this court take judicial notice of various pieces of evidence not included in the district court record.

## II.

Although we lack jurisdiction to consider Martin's challenge to the district court's order imposing sanctions on her counsel, we have jurisdiction to consider Martin's challenge to the district court's order granting summary judgment. The parties did not question our jurisdiction to entertain this appeal in their briefs, but "[a]n appellate court has a duty to consider sua sponte whether appellate jurisdiction is properly invoked." *Mattingly v. Farmers State Bank*, 153 F.3d 336, 336 (6th Cir.1998) (per curiam). Martin did not identify the district court's order for sanctions in her notice of appeal, and she filed her notice of appeal before the district court had decided her "motion for reconsideration" or filed its order imposing sanctions. We ordered the parties to be prepared to discuss at oral argument our appellate jurisdiction.

Because Martin has not perfected her appeal from the district court's order awarding sanctions, we lack jurisdiction to hear it. Federal Rule of Appellate Procedure 3(c)(1)(B) requires that the notice of appeal identify the order(s) from which the appellant appeals. Rule 3(c) imposes jurisdictional requirements that this court cannot waive. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 & n.3 (1988). Martin did not identify the district court's order imposing sanctions in her notice of appeal. By failing either to identify the motion for sanctions in her notice of appeal or to file a new notice of appeal, Martin has not presented this court with a perfected appeal as to the order imposing sanctions. *See United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001) ("This Court, on at least two occasions, has emphasized . . . that 'strict obedience' to Rule 3(c) is warranted, even though it 'may have harsh results in certain circumstances.'" (quoting *Minority Employees v. Tenn. Dep't of Employment Sec., Inc.*, 901 F.2d 1327, 1329 (6th Cir.1990) (en banc))).

We, however, have jurisdiction to address the merits of Martin's discrimination and retaliation claims despite her premature filing of the notice of appeal. Martin filed her notice of appeal on June 2, 2005, within 30 days of the district court's May 9, 2005, order granting summary judgment. Martin complied with Federal Rule of Appellate Procedure 4(a)(1)(A) by filing her notice with the district court within 30 days from the district court's order granting summary judgment. The district court did not decide Martin's motion to alter or amend judgment, however, until July 5, 2005.[3] We do not lack jurisdiction simply because Martin filed her notice of appeal before the

---

[3]Martin actually filed a "motion for reconsideration" under a local rule of the district court concerning magistrates' decisions. We will presume, as the district court did, that Martin intended to file a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e).

district court decided her motion to alter or amend judgment. Federal Rule of Appellate Procedure 4(a)(4)(B) states that a notice of appeal filed in a timely manner after entry of judgment, but before the district court has decided a motion to alter or amend judgment under Federal Rule of Civil Procedure 59, is effective to appeal the underlying judgment. *See* 1991 Amendment Advisory Comm. Notes, Note to Paragraph (a)(4) ("[T]he previously filed notice effectively places jurisdiction upon the court of appeals."). Therefore, because this court has jurisdiction to entertain an appeal from the order granting summary judgment, we proceed to the merits of Martin's appeal.[4]

## III.

Martin has failed to make a prima facie case as to any of her three state-law claims concerning discrimination and retaliation. This court reviews the district court's order granting summary judgment de novo. *See United States v. Miami Univ.*, 294 F.3d 797, 805 (6th Cir. 2002). Summary judgment is appropriate only when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This court must view the facts contained in the record and draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

---

[4]Although it could be argued that this court lacks jurisdiction under 28 U.S.C. § 1291 because Martin filed her notice of appeal before the district court entered a final order, this court has jurisdiction because the district court has since entered a final order in this case. *See Gillis v. U.S. Dep't of Heath & Human Servs.*, 759 F.2d 565, 569 (6th Cir. 1985) (holding that this court has jurisdiction, despite the filing of a premature notice of appeal, if the district court enters a final order prior to the disposition of the appeal); *see also Preferred Props. Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 796 n.4 (6th Cir. 2002) (citing cases and treatise).

(1986). This court cannot weigh the evidence or determine the truth of any matter in dispute, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); this court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party, *id.* at 248-49.

Although the claims in this case concern only Ohio law, Ohio courts have held that federal law interpreting Title VII "is generally applicable" to cases involving Ohio Revised Code 4112. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). Therefore we rely, as do the parties, on federal cases. Plaintiffs may prove employment discrimination by either direct or circumstantial evidence. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Martin never argues that she has uncovered direct evidence of discrimination; instead, she argues that she has produced sufficient circumstantial evidence of discrimination to avoid summary judgment. For cases with indirect evidence of discriminatory intent, the Supreme Court of Ohio has adopted the burden-shifting framework developed by the Supreme Court of the United States in *McDonnell Douglas v. Green*, 473 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Plumbers & Steamfitters*, 421 N.E.2d at 131-32.

This court recently described the familiar *McDonnell/Burdine* burden-shifting framework in the context of sex-discrimination claims:

> To established a prima facie case of gender or racial discrimination under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), [the plaintiff] must demonstrate

that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated male . . . employees for the same or similar conduct. If [the plaintiff] sustains her burden of establishing a prima facie case, the burden then shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for [its actions]. If [the defendant] successfully carries its burden, the burden returns to [the plaintiff] to produce evidence from which a jury could find that [the defendant's] stated reason is merely pretextual.

*McClain v. NorthWest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006) (citations omitted).

This test differs slightly when an employer allegedly retaliates, rather than discriminates on the basis of a personal characteristic that is not to be considered. To state a prima facie case for retaliation, the plaintiff must demonstrate by a preponderance of the evidence that

(1) Martin engaged in activity that Ohio Revised Code 4112 protects;

(2) GE knew that she engaged in this protected activity;

(3) GE subsequently took an employment action adverse to Martin; and

(4) a causal connection between the protected activity and the adverse employment action exists.

*See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). The Supreme Court has recently held that when we consider whether there was an adverse employment action in the context of a retaliation claim, we must ask whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. __, No. 05-259, slip op. at 13 (U.S. June 22, 2006) (internal quotation marks

omitted). With this standard of review and these frameworks in mind, we affirm the order of the district court granting GE summary judgment on Martin's discrimination and retaliation claims.

        1.        *Overtime Claim*

No genuine issue of material fact exists as to Martin's claim that GE discriminated against her because it denied her overtime. The district court correctly determined that, assuming Martin can satisfy the first three requirements for a prima facie case, Martin has not introduced evidence demonstrating that male employees who were similarly situated received more overtime than she did. She has not identified any evidence in the record demonstrating whether or not she received overtime and, if she did, how much overtime she received. Her bare assertion that overtime was taken away from her is not enough to establish inferential evidence of discriminatory animus. Martin has not demonstrated that she had any right to overtime, and mere reduction in overtime hours does not mean that she was treated worse than a similarly situated male employee.

Martin first argues that group leader Mike Wilson received preferential treatment when he worked overtime hours after she returned from medical leave. When attempting to establish an inference of discrimination through comparison, the plaintiff must compare her treatment to the treatment of an employee outside the protected class who is comparable in all relevant respects. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The district court held that Wilson's overtime, however, does not establish a prima facie case of discrimination because he was not similarly situated to Martin, and Martin does not contest this on appeal. As

group leader, Wilson had a different job description and a higher rate of pay. He trained workers, supervised various operations within the Coating Department, and received level R-23 pay. Martin, in contrast, worked on the Grit Blast, moved pallets, fixed the machines, and received level R-22 pay. Wilson and Martin were not similarly situated GE employees, and therefore their comparative treatment cannot create a prima facie case of discrimination for Martin.

Martin also does not establish a prima facie case by arguing that GE treated three similarly situated employees better than her because she has failed to demonstrate that the male employees received more overtime. Martin argues that Flowers, Horner, and Canterbury received overtime to which she was entitled, but she refers to nothing in the record to demonstrate why she was entitled to overtime or that she received fewer overtime hours that her male colleagues. On appeal, Martin only makes the conclusory allegation that "she *has* provided evidence which if accepted by a jury would establish that the Defendant did in fact engage in sexual discrimination by providing Plaintiff's male counterparts . . . with . . . overtime," Martin's Br. at 15, but she never identifies the evidence to which she refers.

Moreover, Martin does not challenge the other findings of the district court. For instance, Flowers testified in his deposition that he "never worked overtime" in the grit blast area. *See* JA 130 (Dep. of I. Flowers). Martin has not pointed to evidence indicating otherwise. There is also no evidence in the record that Horner worked any overtime. As for Canterbury, Canterbury testified that he worked 235 hours of overtime in 2002, but Martin proffers no evidence demonstrating that she received fewer than 235 hours in overtime during the same year. Ultimately, Martin has failed

to carry her burden of developing a sufficient record to establish a prima facie case of discrimination.

## 2.    *Training Claim*

Martin's discrimination claim concerning GE's refusal to train her creates no genuine issue of material fact because Martin has not established that similarly situated male employees received training opportunities that she did not. Throughout her brief, Martin simply asserts that she "was not given the same opportunities and/or treatment enjoyed by her male counterparts." Martin's Br. at 17. But she does not identify which employees were receiving training or what training these employees received. The district court correctly held that "[a]lthough Ms. Martin's vague and unsubstantiated assertions may be appropriate to state a claim in a complaint, they are insufficient to satisfy her burden on summary judgment."

Martin first argues that the EEOC's right-to-sue letter "confirms" that GE discriminated against Martin by denying her training. *See* Martin's Br. at 17. A right-to-sue letter has no bearing on the merits of a complaining party's claim. The letter, instead, certifies that the complaining party has exhausted her administrative remedies, acknowledges that the EEOC does not want to pursue the action on her behalf, and gives her ninety days "after the giving of such notice" to bring suit. *See* 42 U.S.C. § 2000e-5(e) & (f)(1).

Martin's reliance on the affidavits of Whiteside and Davis is also misplaced. The affiants do not specify which male employees received training that Martin did not or what training these

male employees received. They assert nothing more than what Martin herself asserts without any

specific facts or evidence to support her conclusory claims.

Finally, Martin argues that she was promised certain training opportunities,[5] but this promise

does not establish that she was treated worse than similarly situated male employees. There is no

evidence of what training opportunities GE promised her, whether GE promised training to male

employees, and whether male employees received the promised training. A failure to receive

training, even if guaranteed, does not establish by itself that GE discriminated against her because

of her sex. As with her overtime claim, Martin has simply failed to meet her burden of developing

a record that establishes a prima facie claim of sex discrimination.

### 3. Promotion Claim

Martin has not created a genuine issue of material fact as to her promotion/retaliation claim

because she has failed (1) to demonstrate that there is a causal connection between her protected

activity and GE denying her the promotion and (2) to rebut GE's legitimate, nonretaliatory reason

for hiring another employee.

---

[5]As the district court noted, although Martin claimed that she was guaranteed training opportunities in her job description, the job description says nothing of training opportunities. Martin states in her affidavit that the training opportunities were guaranteed according to a job description, which she stated was attached as an addendum to the affidavit. There is no addendum in the record, but there is a job description, listed as Exhibit E, in her recent motion requesting that this court take judicial notice. The description, if it is the one to which Martin refers, says nothing about training opportunities.

Martin alleges, however, that management agreed to train her in October 2002.

Whatever the status of the first three requirements for a prima facie case for retaliation, Martin has failed to demonstrate a causal connection between her EEOC action and her denied promotion. "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Although "[t]he burden of establishing a prima facie case in a retaliation action is not onerous," *see id.* (italics omitted), Martin has not demonstrated a causal connection.

The eleven-month interval between Martin's filing of her EEOC complaint and the adverse employment action is not short enough to establish by itself that there is a causal connection. Although this court leaves open the possibility that temporal proximity alone may support an inference of causation, we have indicated that most cases will require additional facts to support a causal connection. *See Nguyen*, 229 F.3d at 566-67. This court has previously stated in an unpublished opinion that "previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997) (per curiam) (collecting cases in footnote one), *quoted in Nguyen*, 229 F.3d at 567. Martin does not contest that there is not sufficient temporal proximity to establish a causal connection; she instead simply states that GE's use of the matrix system "is the causal connection . . . ." Martin's Br. at 25 (emphasis omitted). Martin does not suggest how the matrix system is the causal connection, and "issues adverted to in

a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999).

Nevertheless, even if Martin has established causation, she still has not rebutted GE's legitimate, nonretaliatory reason for not hiring her: that she did not receive the highest score under the matrix system. Martin may demonstrate pretext by showing that GE's stated legitimate, nonretaliatory reason (1) had no basis in fact, (2) did not actually motivate the adverse action taken against her, or (3) was insufficient to motivate the adverse action taken against her. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Martin alleges only that the matrix score did not actually motivate GE, and the gist of her argument is that GE's proffered reason was a pretext because GE used the matrix system only as a way of avoiding its custom of hiring the most senior employee.

There is no evidence in the record that GE customarily promoted the most senior employee. Martin relies only upon the depositions of Horner and Flowers to demonstrate that hiring decisions were based on seniority. Horner testified that it "seemed to [him] the person with the most seniority would get the job," but then he admitted, "I don't really know people's seniority." JA 237 (Dep. of J. Horner). Flowers stated that hiring decisions are *not* based on seniority, but he also admitted that he did not know how the hiring process worked. Both Horner's and Flowers' testimony establishes, therefore, that they are speculating without having any basis in fact for their opinions. *See* Fed. R. Civ. P. 56(e). Martin never argues that Horner and Flowers were doing anything more than speculating, and she points to no other evidence that indicates openings for group-leader positions

normally went to the most senior employee. There is, therefore, no evidence that supports Martin's argument that GE customarily promoted the most senior employee.

Moreover, that this was the first time that GE used the matrix system does not indicate that GE's use of the system was pretextual. Martin does not argue that Mazza was not the most qualified candidate or that the factors that GE considered in fashioning the matrix score were not legitimate. Martin simply asserts that Mazza's better qualifications did not actually motivate GE. Without any evidence to support her contention, Martin's bare assertion does not create a genuine issue of material fact as to whether GE used a pretext to discriminate against her on the basis of sex.

## IV.

For the foregoing reasons, we AFFIRM the district court's order granting GE summary judgment. We DISMISS Martin's appeal of the order imposing sanctions for lack of appellate jurisdiction. Finally, we DENY Martin's motion of December 5, 2005, for this court to take judicial notice of various pieces of evidence. Not only do we "review the case presented to the district court rather than a better case fashioned after the district court's order," *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990), but the proffered evidence, if accepted, would not alter our decision.