RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                                                          No. 07-3482

        *v.*

JERRY PAULL,
                    *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-00246—Donald C. Nugent, District Judge.

Argued: October 23, 2008

Decided and Filed: January 9, 2009

Before: BOGGS, Chief Judge; and MERRITT and GRIFFIN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Dean Boland, Lakewood, Ohio, for Appellant. Michael A. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Dean Boland, Lakewood, Ohio, Kevin M. Cafferkey, LAW OFFICES, Cleveland, Ohio, for Appellant. Dean M. Valore, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

        BOGGS, C. J., delivered the opinion of the court. GRIFFIN, J. (pp. 19-23), delivered a separate opinion concurring in part and dissenting in part. MERRITT, J. (pp. 24-27), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

        BOGGS, Chief Judge. Jerry Paull was convicted pursuant to a conditional plea agreement on four counts of knowing possession of child pornography under the Child Pornography Protection Act, 18 U.S.C. § 2252 *et seq.* and sentenced to imprisonment for 210

1

months. He now appeals both his conviction and sentence. He claims that the district court ruled improperly on a variety of pre-trial motions, including his motions to suppress for violations of his Fourth Amendment and *Miranda* rights, and his motions to dismiss the indictment because the statute is void for vagueness and because it deprived him of a fair trial. He also appeals his sentence, claiming that the district court incorrectly calculated his guideline range and abused its discretion in failing to vary downward in light of his efforts at rehabilitation and his poor health. For the reasons discussed below we affirm Paull's conviction and his sentence.

## I. Factual & Procedural History

In 2004, Special Agent Hagan of Immigration and Customs Enforcement (ICE) became aware, through multiple investigations of websites known to traffic in images of child pornography, of Jerry Paull's online activity involving child pornography. In June of that year, Hagan obtained a search warrant for Paull's Amherst, Ohio residence based on an affidavit detailing Paull's subscriptions to websites containing advertising with images of child pornography and her experience as an investigator of child pornography. While executing the warrant, Agent Hagan informed Paull that he was not under arrest and that the officers were there only to execute the warrant. She asked whether he was willing to explain his "side of the story" but Paull declined to speak with her. She thereafter left him under supervision of a local officer and joined the search. Conversation in passing between Paull and the searching officers continued but there was no subsequent discussion regarding the search or the suspected crime.

In the course of the search, officers found a garbage can in the garage with "a number of double and triple bagged bundles" in it. In those bundles "there were printed images of child pornography" and "a number of floppy disks, a number of CDs, videotapes, as well as a number of computer printouts of Mr. Paull's." The collection of child pornography totaled over 3,700 images, not including the video tapes. Agent Hagan took this evidence from the garage into the kitchen and laid it on the table in front of Paull, telling him that she no longer needed "to talk with [him] because . . . [she] had the evidence there" and then left the kitchen. Paull immediately requested to speak with her and she returned to the kitchen.

Before Paull made any statement, Agent Hagan advised him again that he was not under arrest. She nevertheless informed him of his *Miranda* rights and gave Paull a statement and waiver of those rights, which he read and signed. He proceeded to give an oral statement taking responsibility for "all the items that were in the garage [and admitting] that they contained child pornography." He subsequently provided a written statement that memorialized his confession and explained his history of involvement with child pornography.

Paull was ultimately indicted on four counts of possession of child pornography under § 2252A(a)(2). Paull made a number of pre-trial motions, all of which the district court denied. First, he moved to suppress the evidence found under the Fourth Amendment. Paull argued that the search violated his Fourth Amendment rights because the warrant was based on an insufficient affidavit, and was overbroad. The court held that there was probable cause to search the entire premises based on the type of evidence and crime involved even considering the delay between the gathering of the warrant evidence and the search. In the alternative, the court held that there was "a good faith basis that the officers believe[d] that the magistrate was correct" and, therefore, the search fit within the exception of *United States v. Leon*.

Second, Paull argued that his confessions were obtained in violation of the *Miranda* rule. Both Paull and Mrs. Paull had testified that, after the initial conversation with Hagan, Paull was interrogated by multiple officers throughout the two-hour search, and that in response repeatedly requested legal counsel. The executing police officers testified to the contrary, claiming that there was no repeated interrogation and Paull never asked for counsel. The district court decided the credibility issue in favor of the officers, describing Paull's testimony as "completely not believable" and Mrs. Paull's testimony as "completely unbelievable." Even if the credibility issue came out the other way, the court held that the interaction was non-custodial because the police tactics were merely reasonable measures to ensure officer safety and did not rebut the presumption that conversations in the home are non-custodial.

Paull also moved to dismiss the indictment based on a vagueness challenge to § 2252 and his allegations that his right to a fair trial was violated. The district court rejected both as meritless.

Having failed to obtain suppression of the evidence against him or a dismissal of the charges, Paull entered a conditional plea of guilty on all four counts of the indictment, reserving his right to appeal any rulings on pre-trial motions and his eventual sentence. The agreement stipulated to an applicable offense level of 30, which included several enhancements based on the circumstances of the crime (enhancements of two levels for images containing a prepubescent minor, four levels for images portraying sadistic/masochistic conduct; two levels for the use of computer; and five levels for the possession of over 600 illegal images). The agreement also left open the possibility of additional reductions or enhancements to this agreed-upon offense level. To that end, the Pre-Sentence Investigation Report recommended two additional enhancements: two levels for obstruction of justice under U.S.S.G. § 3C1.1 and five levels for a pattern of activity involving the sexual abuse of a minor under U.S.S.G. § 2G2.2(b)(5). The report also recommended against a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) because of Paull's obstruction of justice. The addition of these adjustments yielded an offense level of 37 and a guideline range of 210 to 262 months of imprisonment.

At the sentencing hearing, the district court made findings of fact and adopted the report's recommendations. First, the court held that Paull had not demonstrated sufficient acceptance of responsibility to support a reduction because he only cooperated when it was in his best interest and because his behavior supported an obstruction of justice enhancement.

Indeed, the court held that two courses of behavior supported the upward adjustment for obstruction of justice. The court's credibility determination at the suppression hearing supported a finding that Paull perjured himself in giving his version of events. The court concluded that "it's pretty clear to me based on my observation of his demeanor and other testimony that was given at that hearing that he testified falsely." The court also found Paull had consistently "wiped the computer for the reason . . . that he could be caught possessing this material . . . ."

Third, the court held that the evidence supported the adjustment for a pattern of activity involving the sexual abuse of a minor. The court based this enhancement on allegations from Andrew Barry, a friend of Paull's son, that during the early and mid-80s, Paull molested him. The court relied on a letter sent from Barry to the United States Attorney's office and testimony from the probation officer assigned to the case that recounted telephone interviews with Barry and several of his family members and concluded the allegations were credible. The court rejected Paull's argument that only "live testimony from Andrew Barry" should be used.

The district court then sentenced Paull to 210 months in prison, the bottom of the guideline range for an offense level of 37. In doing so, the court rejected Paull's argument for downward variances based on his poor health, his on-going rehabilitation, and his own history of child sexual abuse. The court explained that "your age, your health, your lack of a criminal history under [18 U.S.C. §] 3553 are factors that the Court must and I have considered. I also consider the fact that there's mandatory minimum sentences in this case that are required." But in addition, § 3553 requires "taking into consideration the information . . . about what happens to the victims . . . ." The court emphasized that Paull demonstrated no "empathy, emotion, sorrow, compassion for those children, those thousands of children that are put in this position by people in a place of trust." The court concluded that because the § 3553(a) factors point in opposite directions, "the only fair thing to do is to sentence you within the guidelines."

## II. Pre-Trial Motions[1]

### A

Paull advances two Fourth Amendment theories under which the district court erred in denying his motion to suppress the evidence seized from his home. Paull first argues that the warrant did not establish probable cause because, in his view, the affidavit relied on events that were "at least thirteen months [after] the last time the accused subscribed to the suspect website . . . ." The district court held that the affidavit was sufficient as a matter of law, and, in the alternative, that even if probable cause was lacking, evidence should not be suppressed because the search was in good faith within the meaning of *United States v. Leon*. We review both of these conclusions *de novo*. *United States v. Kincaide*, 145 F.3d 771, 779 (6th Cir. 1998).

As a general matter, Paull is correct that an affidavit must allege "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210 (1932). But that principle alone does not demand suppression in this case. Instead, "[t]he expiration of probable cause is determined by the circumstances of each case and depends on the inherent nature of the crime." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (citing *Sgro*, 287 U.S. at 210-11).

Applying this approach to child pornography, we have reasoned that because the crime is generally carried out in the secrecy of the home and over a long period, the

---

[1] There is some dispute over whether we have jurisdiction to hear the appeal on issues beyond sentencing. Paull's Notice of Appeal is not a model of clarity, stating: "[T]he Defendant . . . hereby gives Notice of Appeal . . . from the sentencing . . . on the questions of law and fact on the above entitled cause entered by the said district court in its sentencing of defendant on April 5, 2007." On one view, this limits the issues on appeal to only the designated sentencing issue. *See McLaurin v. Fischer*, 768 F.2d 98, 101-02 (6th Cir. 1985). But the better reading, in light of the fact that, as the Notice indicates, "counsel was advised . . . to file a Notice of Appeal in a timely manner without the Judgment and Commitment Order, which, to date, has not been journalized," is that this is a generalized notice of appeal sufficient to give us jurisdiction over Paull's entire appeal. This broader reading is confirmed by the Notice's second paragraph beginning "[t]he appeal will also challenge . . . the legality of the sentence" – language that would not make sense unless Paull intended to challenge the conviction and pre-trial orders as well. Moreover, our circuit has avoided "overly technical reading[s]" of the notice of appeal requirement, *Caudill v. Hollan*, 431 F.3d 900, 904 (6th Cir. 2005), in an effort to apply the principle that "[a] mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal . . . can fairly be inferred . . . and the other party was not misled or prejudiced." *Sanabaria v. United States*, 437 U.S. 54, 68 n.21 (1978). Thus, we have jurisdiction to review both the pre-trial and sentencing portions of Paull's appeal.

same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography. *See United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006) ("[E]vidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material."). This approach to staleness in child pornography cases comports with the practice of other circuits. *See, e.g.*, *United States v. Martin*, 418 F.3d 148, 157 (2d Cir. 2005); *United States v. Froman*, 355 F.3d 882, 890-91 (5th Cir. 2004). Indeed, in a case similar to Paull's the Ninth Circuit affirmed the denial of a motion to suppress because "the nature of the crime . . . provided good reason to believe the computerized visual depictions [of child pornography] downloaded by [the defendant] would be present in his apartment when the search was conducted ten months later." *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (internal quotation marks omitted).

The affidavit in this case alleged that Paull subscribed to child pornography websites and that he continued to do so over the course of two years. Paull argues that these allegations are too generalized and remote to provide probable cause against him at the time of the search. But he does not dispute that the affidavit alleges that he was subscribing and downloading images from multiple sites. This makes the habits of similarly situated consumers of child pornography relevant. *See Lacy*, 119 F.3d at 746 n.6 ("The affidavit in this case contained sufficient evidence that [the defendant] had downloaded computerized visual depictions of child pornography to provide a foundation for evidence regarding practices of possessors of such pornography."). For instance, one of the websites to which Paull subscribed was described as an "online-sharing-community" that was "created specifically for sharing child pornography collections." The affidavit's expert description of the barter economy in child pornography provides context for that subscription: Paull was likely involved in an exchange of images and he therefore is likely to have a large cache of such images in order to facilitate that participation. Moreover, while Paull last purchased a subscription thirteen months prior to the search, the record is silent regarding how long it was for or whether it had indeed expired at the time of the search. *Cf. Wagers*, 452 F.3d at 538-39

(upholding probable cause despite all three of the defendant's website subscriptions having lapsed prior to the government investigation). In light of the nature of the crime, these allegations are sufficient to establish a fair probability of on-going criminal activity.

In any case, even if the affidavit did not support probable cause, it fits comfortably within the *Leon* good-faith exception, which allows admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). Paull argues that the affidavit's generalities make it "bare bones" and therefore ineligible for this exception, but our cases on point hold that even where an officer's experience provides too little evidence to establish probable cause, it suffices to make the affidavit not bare bones by providing a reasonable connection between the defendant and the alleged crime. *See United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994) ("[A]lthough we have held [an affiant's] training and experience were not sufficient to establish a nexus of probable cause . . . the connection was not so remote as to trip on the 'so lacking' hurdle."). To the extent that one is persuaded that there are gaps in the evidence caused by the delay between the investigation and the search, they were filled in by Agent Hagan's experience, whose familiarity with consumers of child pornographers gave her adequate reason to suspect that Paull continued to possess illegal images. That is sufficient for a seizing officer to have relied on the warrant in good faith.

Next, Paull argues that the search warrant was "overbroad" because it permitted the search of his garage in addition to the residence. This argument fails because it assumes, without authority, that a garage is presumptively excluded from a valid warrant to search a house. Our law presumes the opposite, that "a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage." *United States v. Watkins*, 179 F.3d 489, 505 (6th Cir. 1999) (Boggs, J. concurring) (collecting cases). To be sure, there are cases similar to those described in *United States v. Ross* where "probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."

456 U.S. 798, 824 (1982). But this case is not such a case. In a case like Paull's, where the evidence sought includes images that the defendant likely wants to keep secret, even from his wife, and can easily be concealed in storage in a garage or basement, a reasonable search includes those areas. *See Watkins*, 179 F.3d at 506 ("[T]he weight of the authority is clear that when searching for small portable items such as drugs and records, there is no need to provide separate probable cause or identification of auxiliary structures."). In other words, if there was probable cause to believe Paull possessed child pornography at his residence, there was probable cause to search in the most likely hiding places.

**B**

Paull argues that both his oral and written confessions were obtained in violation of his *Miranda* rights and therefore should have been suppressed. Because the district court's resolution of this issue involved rejecting Paull's version of events, he must demonstrate both that the district court's factual conclusions were in error and that its legal holding was wrong. We review the factual question for clear error and the legal question *de novo*. *See United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004).

Paull makes no attempt to demonstrate that the district court clearly erred in crediting the officers' testimony. Paull only repeats his insistence that his testimony (and his wife's corroboration) that he was questioned during the search and that, during these interrogations, he repeatedly requested a lawyer should be believed. Having no new reason now, reviewing a cold transcript under a deferential standard, to revisit the district court's conclusions, we will not displace the district court's findings that the Paulls were not credible and that the officers' version was the truthful one. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *United States v. White*, 270 F.3d 356, 366 (6th Cir. 2001) (upholding district court factual findings because district court credited officer testimony over the appellant's). On that view of the evidence, the officers asked Paull only once for an interview and, after he declined, they had no substantive conversations with him

until he offered to make a statement and never requested a lawyer. Absent a claim he was interrogated or asked for an attorney, there can be no *Miranda* violation.

## C

Paull claims that the intersection of prosecutorial discretion and the harshness of 18 U.S.C. § 2252A would have denied him a fair trial in violation of his Due Process and Sixth Amendment rights. This argument is premised on the fact that the statute has no explicit exception for those who possess or view illegal images in connection with a trial defense and, therefore, any expert (or counsel) would necessarily violate the law (and chance prosecution) by undertaking an analysis of the images. For example, Paull argues that a defendant wishing to put on a defense that the images he possessed were not illegal photographs but legal digitally generated images could not do so because no expert capable of distinguishing the images would be willing to undertake the attendant risk of prosecution. Worse, Paull argues, the government's experts are inoculated from this risk by prosecutorial discretion. In light of this alleged handicap to his defense, Paull concludes that he should not be tried at all for his possession of child pornography.

Paull, however, makes no allegations that the government used the law to disrupt his defense or that any specific expert witness would not cooperate. Nor does he show that, if this had been the case, he could not have asked the district court for relief short of dismissal. *See United States v. Miller*, 2007 U.S. Dist. LEXIS 4332 at * 12-13 (N.D. Ohio Jan. 22, 2007) ("There is no indication that defendant has been deprived of the content of the actual images charged. Nor is there any persuasive argument as to why a limited protective immunity order could not be issued in this matter.");*United States v. Halter*, 2006 U.S. Dist. LEXIS 54276 at *9-10 (N.D. Ohio March 31, 2006) ("The Court conferred with counsel on this very issue prior to trial and the United States proposed that the [illegal] images be made available for Defense counsel's review, subject to a protective order, with the supervision of the FBI."). Indeed, the state court decision Paull cites as authority for this fair trial argument proves this point: the court dismissed the charges under the Ohio child pornography statute because "the Defendant . . . may be prosecuted by the Federal Government. The Court feels that would be the

preferable outcome" because a federal court could try the case "without running the risk that the Defense expert would find himself indicted for the possession of this material." *State v. Drady*, Case No. 2004-CR-349 at 8 (Ohio Court of Common Pleas 2004). Paull was tried in a federal court and could have worked with the district court and the government to ensure that he could put on the defense he wanted. But he chose not to. There was no violation of Paull's right to a fair trial.

**D**

Paull's final pre-trial argument was that § 2252 *et seq.* is unconstitutionally vague because "he lacks the capacity to know whether the charged items contain actual minors" or virtual images of simulated child pornography protected under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). This argument fails because it misapprehends the void for vagueness doctrine. "Vagueness doctrine is an outgrowth not of the First Amendment but of the Due Process Clause of the Fifth Amendment. A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes discriminatory enforcement." *United States v. Williams*, 128 S. Ct. 1830, 1845 (2008). These due process origins mean that "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminancy of precisely what that fact is." *Williams*, 128 S. Ct. at 1846. Thus, in *Williams*, the Supreme Court described the lower court's "error [as] . . . fundamental" because it focused on the fact it may generate close cases and not the statute's sufficiently clear description of the prohibited conduct. *Ibid.*

Paull makes the same fundamental error in asking us to invalidate the Child Pornography Prevention Act. He does not argue that a person cannot read the statute and determine what is illegal; instead he argues that, knowing what is illegal, he cannot distinguish between the prohibited and the permitted. Such an inability to determine whether a crime has been committed "is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 128 S. Ct. at 1846.

The government provides a helpful analogy: "A defendant in a drug case could use [the] same logic to argue the drug statutes are unconstitutionally vague because he could not know at the time of purchase whether he was buying authentic cocaine." Appellee's Br. at 54. Like the drug messenger arguing the substance he possessed was not real drugs, Paull's refuge from illegal prosecution is not the constitution but putting the government to its burden to prove that he possessed child pornography.

### III. Sentencing

In reviewing federal sentences after *Booker*, "the question in the end is whether the district court abused its discretion." *United States v. Grossman,* 513 F.3d 592, 595 (6th Cir. 2008) (citing *Gall v. United States*, 128 S. Ct. 586, 597 (2007)). This review for abuse of discretion proceeds in two dimensions. The first ensures "that the district court committed no significant procedural error." *Gall*, 128 S. Ct. at 597. The second considers "the substantive reasonableness of the sentence imposed." *Ibid.* Paull alleges errors in both dimensions and we take each in turn.

### A

Paull charges the district court with three errors in calculating his offense level: the district court should not have enhanced his sentence for obstruction of justice; the district court should not have enhanced his sentence for a pattern of activity involving the sexual abuse of a minor; and the court should have reduced his sentence for acceptance of responsibility. When reviewing such procedural errors, our circuit defers to the sentencing court's factual determinations unless clearly erroneous but reviews interpretations of the guidelines *de novo*. *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005).

First, the application of the enhancement for obstruction of justice under U.S.S.G. § 3C1.1 was proper in this case. A finding of specific acts of perjury supports this enhancement. *See United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002) ("[A] district court's findings will be adequate if: 1) the record is sufficiently clear to indicate which statements the district court consider perjurious; and 2) the district court

found that the statements satisfied each element of perjury."). The district court made such a finding here:

> I had to make a judgment whether the officers testified truthfully and/or whether Mr. Paull was testifying falsely when he accused them of lying. It was very clear to me, because he signed statements at the time of his arrest, that no promises of any leniency of any kind were made . . . and so either he lied then or lied during his testimony . . . And it's pretty clear to me based on my observation of his demeanor, and the other testimony that was given at the hearing that he testified falsely.

Like Paull's argument for reversal on the *Miranda* issue, his claim here that his testimony was truthful and the officers were lying simply reasserts his trial court insistence that he testified truthfully despite the express holding that he did not. And, again, this assertion is without support in the record and does not demonstrate clear error. *Anderson*, 470 U.S. at 574. Accordingly, the district court did not err in finding he committed perjury. On this record, enhancing Paull's total offense level by two under U.S.S.G. § 3C1.1 was appropriate.[2]

Second, the five-level enhancement under U.S.S.G. § 2G2.2(b)(5) for a pattern of activity involving sexual abuse or exploitation of a minor was appropriate. Paull insists that the facts were legally insufficient to support the district court's holding.[3] The letter from Barry detailing the abuse, however, makes specific allegations, including when the activity started, the time of day and year (evenings during football and basketball season, when Paull would be free from his other family members), and was corroborated by family members of the victim. Paull argued at sentencing that he was always at those basketball and football games to watch his son perform in the high

[2]Because either basis could have supported the enhancement independently, there is no need to consider the district court's alternative conclusion that "wiping" a computer was sufficient. We note, however, that Paull's behavior probably did not support the enhancement because he did not *know* that he was under investigation when he "wiped" his computer. *See United States v. Brown*, 237 F.3d 625, 628 (6th Cir. 2001) ("The obstruction adjustment applies where a defendant engages in obstructive conduct with knowledge that he or she is the subject of an investigation or with the correct belief that an investigation of the defendant is probably underway.").

[3]Paull also argues that the supporting facts should have been found beyond a reasonable doubt. This is foreclosed by previous decisions because "[t]his court has squarely rejected defendants' contention that *Booker* and *Blakely*[] require all factual finding affecting a sentence's severity to be made by a jury beyond a reasonable doubt." *United States v. Sexton*, 512 F.3d 326, 329-30 (6th Cir. 2008).

school band and provided the court with letters from family friends indicating that Paull attended all of his son's events. Evidently, the district court credited Barry's specifics over Paull's generalities. But, regardless, disputed facts do not make evidence insufficient and Paull offers no reason why it would be clear error to find that, by a preponderance of the evidence, Paull did molest Barry.

Paull's arguments also imply that basing the enhancement on hearsay evidence at all was error. The district court's reliance on Barry's letter without live testimony from Barry is clearly permissible under our law. *See United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc) ("So long as the evidence in the presentence report bears some minimal indicia of reliability in respect of defendant's right to due process, the district court . . . may . . . consider and rely on hearsay evidence without any confrontation requirement.") (internal quotation marks omitted). While recent developments in sentencing and Confrontation Clause jurisprudence "may be a broad signal of the future, there is nothing specific in *Blakely*, *Booker* or *Crawford* that would cause this Court to reverse its long-settled rule of law that [the] Confrontation Clause permits the admission of testimonial hearsay evidence at sentencing proceedings,"and so we will "continue to observe [our] precedent that testimonial hearsay does not affect a defendant's right to confrontation at sentencing." *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006).

We underscore that this cautious approach to a changing area of law is the proper result of following our precedent. *Crawford* dealt only with the content of *what* the Confrontation Clause requires and not the scope of *when* it applies. *Silverman*, on the other hand, rested on the proposition that the Confrontation Clause does not regulate information relied on in sentencing and not that the clause applied but it nevertheless permitted the use of hearsay. *See Silverman*, 976 F.2d at 1508 (explaining that despite the guidelines' alteration of sentencing considerations, "the permissible methods of informing the sentencing judge and the need for information in fashioning sentences in light of the constitutional rights of defendants at sentencing have not essentially changed. The standard has always been that . . . specific procedures, such as are

required at trial, are simply not constitutionally mandated . . . .").  The rule in *Crawford* thus does not affect the basis for *Silverman*.  *See United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005) ("Because *Crawford* was concerned only with testimonial evidence introduced at trial, *Crawford* does not change our . . . rule that the confrontation clause does not apply in sentencing proceedings."); *United States v. Kirby*, 418 F.3d 621, 627-28 (6th Cir. 2005) (holding that *Crawford* does not affect admissibility of hearsay in hearings regarding the revocation of supervised release).

This approach of leaving *Crawford*'s Confrontation Clause rule where it is found has been adopted by every court of appeals to consider the decision's implication for hearsay in sentencing hearings.[4]  *See United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006) ("[T]here is no *Crawford* violation when hearsay testimony is used at sentencing, rather than at trial."); *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005) ("*Crawford* dealt with trial rights and we see no reason to extend *Crawford* to sentencing proceedings.  The right to confrontation is not a sentencing right."); *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005) (holding *Crawford* does not bar hearsay in sentencing because "the relevant provision at sentencing is the Due Process Clause, not the confrontation clause . . . ."); *United States v. Luciano*, 414 F.3d 174, 178 (1st Cir. 2005) ("Nothing in *Crawford* requires us to alter our previous conclusion that there is no . . . Confrontation Clause right at sentencing."); *United States v. Martinez*, 413 F.3d 239, 243 (2d Cir. 2005) ("Neither *Crawford* nor *Booker* . . . addressed the applicability of the right of confrontation to the sentencing context . . . nor did [they] so undermine the rationale of Second Circuit precedent involving the consideration of hearsay testimony at sentencing . . . .").

Third, Paull does not show that the district court erred in refusing to apply a two-level reduction for the acceptance of responsibility because of Paull's obstruction of

---

[4]The Eleventh Circuit has extended Confrontation Clause rights to death penalty cases but that extension occurred long before *Crawford* and was not altered by the Supreme court's recent decisions. *See United States v. Brown*, 441 F.3d 1330, 1361 n.12 (11th Cir. 2006) ("We have held that *Crawford* does not apply in the context of non-capital sentencing.  However, death is different, and we have held . . . that the constitutional right to cross-examine witnesses applies to capital sentencing hearings.") (internal citations omitted).

justice.   In cases such as Paull's where a defendant's plea counsels for a reduction but his behavior does not, the guideline's application note explains "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility.   There may, however, be extraordinary cases . . . ." U.S.S.G. § 3E1.1, cmt. n.4.  In implementing this "extraordinary case" exception to the proposition that obstructing justice demonstrates a lack of acceptance, we have "consistently granted district courts great leeway when making this determination," *United States v. Roberts*, 243 F.3d 235, 241 (6th Cir. 2001) (collecting cases), and held that "the defendant has the burden of proving the extraordinary nature of his or her case," *United States v. Jeross*, 521 F.3d 562, 582 (6th Cir. 2008).  Here, Paull makes no argument why his obstruction is not a run-of-the-mill case.   Instead, he continues to rely on the very testimony the district court held perjurious in his suppression argument before this court, without making any new good faith argument that the district court erred in its credibility and factual findings.  *Cf. United States v. Gregory*, 315 F.3d 637, 640-41 (6th Cir. 2003) (holding a defendant is not "entitled to an adjustment for acceptance of responsibility" where the obstruction is "on-going.").  On this record, Paull has not demonstrated the district court was acting impermissibly in refusing the reduction.

**B**

Paull further claims that the sentence was substantively unreasonable.   Our circuit takes a deferential approach to this type of substantive sentencing challenge. *See United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) ("[T]he central lesson [of recent Supreme Court activity is] that district courts . . . deserve the benefit of the doubt when we review their sentences and the reasons given for them." ).  This is especially true in cases, like Paull's, where the district court agrees with the recommendations in the sentencing guidelines.  In such cases "this court has embraced an appellate presumption of reasonableness" that the defendant must rebut. *Id.* at 389.

Paull attempts to do so with two arguments.   First, he alleges that the sentence is greater than necessary to serve the purposes of § 3553(a).  Second, he argues that the

district court over-emphasized the impact on victims and inappropriately discounted factors that weighed for a downward variance. Taken in concert and at full face value these claims make at least a plausible argument that the presumption has been rebutted: Paull is an old and sick man who has been extraordinary in his attempts to rehabilitate himself and but for the district court's over-emphasis on the impact on the victims he should have received a lighter sentence. The record, however, also contains material that belies this characterization of the considerations relevant to Paull's sentencing. The district court's summary illustrates the competing factors:

> Now, I could vary up, and that's something I considered in this case due to the nature of the volume and the number of images you had and the extent of what you did, or I could vary down because of your age, your health, and your lack of criminal background and, in fact, the things that you've done since your arrest to try to prevent yourself from ever engaging in this type of conduct.
>
> But I want you to know I've taken all of that into consideration, and I think the only fair thing to do is sentence you within the guidelines.

Far from being impermissible or inadequate, this analysis of the considerations the court found most important – the defendant's circumstances and the seriousness of the crime – is just the sort of balancing a sentencing court should be doing. *See, e.g.*, *United States v. Duane*, 533 F.3d 441, 453 (6th Cir. 2008) (upholding a within-guidelines sentence as substantively reasonable where "the district court clearly considered the § 3553(a) factors that it found most pertinent – namely the seriousness of the crime, the need for deterrence and the guidelines range."). Indeed, this is what is meant by the "on-the-scene assessment of the competing considerations" to which we are to defer. *United States v. Grossman*, 513 F.3d at 596.

More broadly, we cannot say, in light of our deferential review, that the sentence of 210 months of imprisonment was unreasonable. It is at the lower end of the guidelines range and accurately reflects both the reasons to vary downward and the severity of Paull's offense. *See Vonner*, 516 F.3d at 390. To be sure, there are reasons here – as in any sentencing case – to be sympathetic to the defendant. Paull is a former minister who has admirably worked with a sex addiction group at rehabilitating himself

and others, and the combination of his age, his various health problems, and the length of his sentence mean he almost certainly will die in jail or shortly after his sentence expires.  But our role as an appellate court is not "to impose sentences in the first instance or to second guess the individualized sentencing discretion when it appropriately relies on the § 3553(a) factors . . . ."  *United States v. Davis*, 537 F.3d 611, 618 (6th Cir. 2008).  Indeed, we routinely uphold the sentences of sick defendants, *e.g. United States v. Johnson*, 239 F. App'x 986, 992 (6th Cir. 2007) (unpublished decision), and the sentences of rehabilitated defendants, *e.g. United States v. Monday*, 218 F. App'x 419, 424 (6th Cir. 2007) (unpublished decision), over their appeals for a variance. This is because we are reviewing for unreasonable sentences, not sympathetic defendants. Defendants such as Paull are sentenced only after their crime, the *actual* possession of images of *actual* young children depicting *actual* sexual abuse has been proven or they, as in Paull's case, have admitted to guilt, pursuant to a constitutionally prescribed process designed to guard against erroneous conviction.

Under these circumstances, it seems to me that the dissent's suggestion that such convictions "border[] on" "the thousands of witchcraft trials and burnings conducted in Europe and here from the Thirteenth to the Eighteenth Centuries" cannot be maintained, without some risk of terminological inexactitude.

## IV. Conclusion

The judgment of the district court is therefore AFFIRMED.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

GRIFFIN, Circuit Judge, concurring in part, and dissenting in part. I would hold that we lack jurisdiction to decide issues unrelated to defendant Paull's sentence. Thus, for the reasons expressed below, I disagree and respectfully dissent from footnote 1 of the lead opinion. However, assuming arguendo our jurisdiction regarding all issues, I join the remainder of the Chief Judge's opinion.

In his appellate brief, defendant Paull challenges various pretrial rulings, asserts that he was denied a right to fair trial, contends that the statute on which his conviction was based is unconstitutionally vague, and appeals his sentence. Defendant's notice of appeal, however, unambiguously requests review of his sentence only:

> Now comes the Defendant, Jerry Paull, by and through his attorney, Kevin M. Cafferkey, who hereby gives Notice of Appeal to the United States Court of Appeals for the Sixth Circuit from the sentencing of the United States District Court on the questions of law and fact on the above entitled cause entered by the said district court in its sentencing of defendant on April 5, 2007. To preserve defendant's right to appeal, counsel was advised on Monday, April 16, 2007 to file a Notice of Appeal in a timely manner without the Judgment and Commitment Order, which, to date, has not been journalized for the docket in this case.

> The appeal will also challenge, pursuant to Title 18, U.S.C. 3742(a), the legality of the sentence, to wit: That said sentence was unreasonable and was greater than necessary to comply with the purposes of sentencing as provided for in 18 U.S.C. 3553, et seq. and was in violation of law, and/or was the result of an incorrect application of the Sentencing Guidelines and/or is greater than the sentence specified in the applicable guideline range.

Given the sole basis for his appeal and the broader issues raised in defendant's appellate brief, we are confronted with the threshold question of jurisdiction. "An appellate court has a duty to consider sua sponte whether appellate jurisdiction is properly invoked." *Mattingly v. Farmers State Bank*, 153 F.3d 336, 336 (6th Cir. 1998). Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure requires that the notice of

appeal "designate the judgment, order, or part thereof being appealed." The Supreme Court has stated that "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248 (1992). Consistent with the Supreme Court's directive, we have stated that the requirements of Rule 3 are "mandatory and jurisdictional in nature," *Isert v. Ford Motor Co.*, 461 F.3d 756, 759 (6th Cir. 2006), and that this court cannot waive them. *Martin v. Gen. Elec. Co.*, 187 F. App'x 553, 557 (6th Cir. 2006) (citing *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988)). By enacting this provision, "Congress has limited this Court's appellate review to issues designated in the notice of appeal." *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001). Accordingly, if an appellant "chooses to designate specific determinations in his notice of appeal – rather than simply appealing from the entire judgment – only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir. 1985). *Accord United States v. Univ. Mgmt. Servs., Inc.*, 191 F.3d 750, 756 (6th Cir. 1999); *Caldwell v. Moore*, 968 F.2d 595, 598 (6th Cir. 1992) ("[W]here a notice of appeal specifies a particular order, only the specified issues related to that order may be raised on appeal."); *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 516 (6th Cir. 1991); *United States v. Pickett*, 941 F.2d 411, 415 n.3 (6th Cir. 1991) ("An appellant waives any appeal to a portion of a judgment not mentioned in his notice of appeal if he chooses to designate specific determinations in his notice.") (internal quotation marks omitted). We are therefore precluded from considering matters beyond the scope of the orders, judgments, or parts thereof specifically designated in the notice of appeal.

Although the Chief Judge is correct that we generally construe the notice of appeal liberally and avoid "overly technical" readings of Rule 3(c)'s requirements, defendant's notice of appeal unambiguously challenges the district court's determinations relating to his *sentence*. Specifically, the introductory sentence of the notice states:

> Now comes the Defendant, Jerry Paull, by and through his attorney, Kevin M. Cafferkey, who hereby gives Notice of Appeal to the United States Court of Appeals for the Sixth Circuit *from the sentencing* of the

> United States District Court on the questions of law and fact on the above entitled cause entered by the said district court in its *sentencing* of defendant on April 5, 2007.

(Emphasis added.) The next paragraph of the notice further emphasizes that defendant is appealing his sentence, uses the words "sentence" or "sentencing" four times, and even *designates* specific parts of the sentence as the basis for his appeal:

> That said *sentence* was unreasonable and was greater than necessary to comply with the purposes of *sentencing* as provided for in 18 U.S.C. 3553, et seq. and was in violation of law, and/or was the result of an incorrect application of the *Sentencing* Guidelines and/or is greater than the *sentence* specified in the applicable guideline range.

(Emphasis added.) Defendant cites but two statutes in his notice – 18 U.S.C. § 3742(a) and 18 U.S.C. § 3553 – both of them *sentencing* statutes. Nowhere in the notice did defendant, who was represented by counsel, manifest an intent to appeal his conviction, the district court's pretrial rulings, the alleged denial of the right to fair trial, or the constitutionality of the statute on which his conviction was based.

> However, footnote 1 of the lead opinion states:

> [T]he better reading, in light of the fact that, as the Notice indicates, "counsel was advised . . . to file a Notice of Appeal in a timely manner without the Judgment and Commitment Order, which, to date, has not been journalized," is that this is a generalized notice of appeal sufficient to give us jurisdiction over Paull's entire appeal. This broader reading is confirmed by the Notice's second paragraph beginning "[t]he appeal will also challenge . . . the legality of the sentence" – language that would not make sense unless Paull intended to challenge the conviction and pre-trial orders as well.

I respectfully disagree. Defense counsel referenced the Judgment and Commitment Order in the notice of appeal to explain why he was filing a *premature* notice of appeal. Defense counsel was clearly concerned about the impact of the district court's delay in entering written judgment on his client's right to appeal. Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure imposes a strict ten-day deadline for filing notices of appeal after entry of judgment in a criminal case. District judges carefully advise criminal defendants at sentencing of that unforgiving deadline. Accordingly, defendant

referenced the Judgment and Commitment Order in his notice not because of its *content*, but because of its *timing* – defendant simply intended to preserve his right to file a timely appeal. Consistent with this interpretation, the notice states:

> *To preserve defendant's right to appeal*, counsel was advised on Monday, April 16, 2007 to file a Notice of Appeal in a *timely manner* without the Judgment and Commitment Order, which, to date, has not been journalized for the docket in this case.

(Emphasis added.)

The first sentence of the second paragraph does not alter this construction of defendant's intent. That sentence reads, in relevant part: "The appeal will also challenge, pursuant to Title 18, U.S.C. 3742(a), the legality of the sentence." In fact, that sentence merely confirms just what it says: that defendant intended to challenge his *sentence*. Contrary to the lead opinion, the word "also" does not demonstrate that defendant intended to appeal matters beyond his sentence. Having already designated his intent to appeal "from the sentencing" in general, defendant simply intended to then articulate those *specific* parts of the sentence to be challenged:

> That said sentence was unreasonable and was greater than necessary to comply with the purposes of sentencing as provided for in 18 U.S.C. 3553, et seq. and was in violation of law, and/or was the result of an incorrect application of the Sentencing Guidelines and/or is greater than the sentence specified in the applicable guideline range.

The notice in this case is similar to the notice in *United States v. Harper*, No. 07-3593 (6th Cir. Oct. 1, 2008) (unpublished) in which we held that the court had jurisdiction to consider on appeal only issues related to defendant's sentence.[1] The notice in *Harper* read:

> Notice is hereby given that the Defendant in the above-captioned action, Dennis P. Harper, by and through his undersigned attorney, hereby APPEALS to the United States Court of Appeals for the Sixth Circuit

---

[1]Unpublished opinions of this court are not precedentially binding under the doctrine of stare decisis but may be considered for their persuasive value. *United States v. Lancaster*, 501 F.3d 673, 677 (6th Cir. 2007); *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

from the Sentence of this Court, entered on April 30, 2007, with Judgment in a Criminal Case being filed on May 1, 2007.

*Id*. at 1. Thus, in *Harper*, although the notice referenced the "Judgment in a Criminal Case," we concluded that "there is no way to reasonably read Defendant's notice of appeal as seeking review of his conviction." *Id*. at 3.

Here, as well, we cannot assume post hoc that defendant intended to appeal issues separate from his sentence simply because the words "Judgment and Commitment Order" appear in the notice. To do so is to impart jurisdiction where there is none. Although we may give an appellant the benefit of the doubt, we cannot render jurisdictional requirements meaningless by stretching them beyond recognition. "[F]ederal courts are courts of limited jurisdiction with only such jurisdiction as is defined by the Constitution and granted by Congress." *Glover*, 242 F.3d at 335 (internal quotations and citation omitted). If defendant intended to appeal matters beyond his sentence, he could have, and would have, so stated.

For these reasons, I concur in part and dissent in part. I respectfully dissent from footnote 1 of the lead opinion. However, assuming arguendo our jurisdiction regarding all issues, I join the remainder of Chief Judge Boggs's opinion.

———————————

## DISSENT

———————————

MERRITT, Circuit Judge, dissenting.  As a recent October 23, 2008, *Wall Street Journal* article by Amir Efrati points out, our federal legal system has lost its bearings on the subject of computer-based child pornography.  Our "social revulsion" against these "misfits" downloading these images is perhaps somewhat more rational than the thousands of witchcraft trials and burnings conducted in Europe and here from the Thirteenth to the Eighteenth Centuries, but it borders on the same thing.  In 2008 alone the Department of Justice has brought 2,200 cases like this one in the federal courts.  Some trial and appellate judges are sending these mentally ill defendants like Paull to federal prison for very long sentences.  But the 17-1/2 year sentence for Paull may be the longest yet.  He is a 65-year-old, psychologically disabled, former minister with Type 1 diabetes with many complications.[1]  How could this sentence be "not greater than necessary" to punish this crime?

*First*, I disagree with my colleagues that the Confrontation Clause permits sentences based on double hearsay for the reasons I previously set out fifteen years ago in *United States v. Silverman*, 976 F.2d 1502, 1524-27 (6th Cir. 1992) (Merritt, dissenting with Judges Keith, Martin and Jones joining).  Here the district judge — using a determinate sentence based on Guidelines enhancements — increased Paull's sentence by five levels and many years based solely on hearsay three levels deep about events that are claimed to have occurred many years ago.  There was no way for Paull to confront or cross-examine any witnesses, no showing that witnesses were unavailable, not even an effort to show that the evidence was reliable.  The recent Supreme Court case of *Crawford v. Washington*, 541 U.S. 36, 54 (2004) ("The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts"), reinforces the views I explained in *Silverman*.

———————————

[1]*See* the portions of the pre-sentence report concerning Mr. Paull and his problems attached as an appendix.

*Second*, I do not agree that the other determinate sentencing enhancements that ratchet up to 17-1/2 years the sentence based on judge found facts are permissible under the *Blakely-Booker-Cunningham* line of cases. *See*, *e.g.*, my dissenting opinions in *United States v. Thompson*, 515 F.3d 556 (6th Cir. 2008), and *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008). As the Supreme Court explained in *Cunningham v. California*, "Under the Sixth Amendment any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge." 519 U.S. 270, 127 S. Ct. 856, 863-64 (2007). *See also* Justice Scalia's recent dissenting opinion from the failure to grant *certiorari* in *Marlowe v. United States*, 555 U.S. ____ (No. 07-1390, October 14, 2008). I would, therefore, reverse the judgment of the district court and remand for re-sentencing based only on the facts corresponding to the defendant's guilty plea.

**APPENDIX**

The defendant married Donna Rankin in June 11, 1966, in Tuscarawas County, Ohio. Ms. Rankin is 62 years old and is a retired school teacher. The couple have two children: Katherine, who is 40 years old and resides in North Carolina; and Eric, who is 35 years old and resides in Tennessee. Mr. Paull indicated Katherine is not his biological daughter. Rather, she is the daughter of his brother, Phillip, whom the defendant and his wife obtained custody of when she was approximately 18 months old and eventually adopted when she was 5 years old.

. . .

According to information received from the defendant's physician, Mr. Paull has suffered from Type I diabetes for approximately 30 years, with complications resulting in retinopathy, neuropathy and frequent severe hypoglycemia and seizures. Mr. Paull also suffers from osteoporosis and Meniere's disease which results in severe vertigo. The defendant also suffers from hypercholesterolemia, and has a history of bronchiectasis. In 2007, the defendant was also diagnosed with coronary artery disease.

Since 1994, the defendant's diabetes has required him to use an insulin pump to help regulate his glucose. According to a diagnosis in 2004 by the defendant's physician, Dr. Sheehan, individuals with cardiac autonomic neuropathy similar to Mr. Paull can have a 50% 5 year

mortality rate. The doctor also stated due to the defendant's Meniere's disease, he is at significant risk for acute vertigo and falls which, given his osteoporosis, could have disastrous consequences such as bone fractures. Mr. Paull is also prone to pneumonia based on having bronchiectasis.

Mr. Paull is currently prescribed Novalog, Insulin Pump, Plavis, Pravacol, Lisinopril, Actonel Tabs 4, Dyazide, Meclizine, Diazepam (Valium), Nitroquick, Ketoconazole Cream, Ambien CR, and Tiamcinolone Acetone Cream.

In 1991, the defendant did suffer a fall due to his Meniere disease in which he fractured his left shoulder and hip, requiring surgery to both. The defendant has also undergone Angioplasty and had two stents placed in his heart after suffering a heart attack in January 2007. Mr. Paull is currently participating in cardiovascular therapy. The defendant stated he as prone to episodes of vertigo regularly and was prescribed Valium to help reduce the frequency of the attacks. Mr. Paull stated it is unknown what triggers his episodes of vertigo and indicated he last experienced an episode in January 2007.