NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0503n.06

Nos. 18-3006/3131

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 11, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| BRIAN P. MILLER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |

BEFORE:     BATCHELDER, GIBBONS, and ROGERS, Circuit Judges

ROGERS, Circuit Judge.   Brian Miller pleaded guilty to knowing receipt of child pornography and was sentenced to 200 months' imprisonment, followed by 20 years of supervised release with special conditions, and ordered to pay a total of $3000 in restitution. On appeal, Miller takes issue with the calculation of his Guidelines range, certain terms of his supervised release, and his restitution obligations. But none of those arguments warrants relief, for there is sufficient evidence of a pattern of prior sexual abuse to support the contested five-level bump to his Guidelines range, the imposition of special conditions of release was procedurally proper and any substantive challenge has been waived, and the district court properly exercised its discretion in ordering restitution.

Based on an investigation from late 2015 into early 2016, FBI agents determined that an IP address assigned to Rachel Gardner's residence was being used to download child pornography. After obtaining a warrant, officers searched Gardner's residence and seized several computers and

hard drives containing approximately 888 images and 8 videos of child pornography. Miller, who shared the residence with Gardner, admitted to officers that he, and he alone, used one of the computers located in the residence and claimed he had accidentally used it to download child pornography. Later forensic examinations uncovered evidence connecting Miller to two of the other seized computers and determined that all three had been used regularly to download child pornography.

Miller eventually pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). As part of his plea agreement, Miller waived his right to appeal his conviction or sentence, except under a few circumstances, including if "the sentence imposed was procedurally unreasonable." At Miller's plea hearing, and at the court's instruction, the prosecutor accurately explained the terms of the waiver for the record, after which the court asked Miller's counsel to confirm both that she had reviewed the entire plea agreement with Miller and also that she believed him to understand her advice, and separately asked Miller to confirm that he had read, understood, and signed the agreement, which he did.

Ahead of sentencing, the Probation Office calculated an advisory Guidelines range of life imprisonment, reduced to a recommended sentence of 240 months in prison because of a twenty-year statutory maximum. *See* § 2252(b)(1). At sentencing, Miller raised several objections to those calculations, which prompted the court to reduce his Guidelines range to 292–365 months (which, of course, remained above the statutory maximum). Miller was unsuccessful, however, in challenging the five-level Guidelines enhancement he received for engaging in a "pattern of activity involving the sexual abuse or exploitation of a minor," U.S.S.G. § 2G2.2(b)(5), based on allegations that he had on several occasions sexually abused Gardner's children, BG and JB, while sharing a residence with them. The district court credited videotaped statements made by JB

during an earlier police investigation and found by a preponderance of the evidence that Miller had engaged in a pattern of activity involving the sexual abuse of a minor sufficient to justify the enhancement.

Despite an effective Guidelines range of 240 months, the district court sentenced Miller to 200 months' imprisonment. The court also imposed a twenty-year term of supervised release with several special conditions, including prohibitions on "loitering where minors congregate" and "view[ing] or possess[ing] material . . . containing sexually-explicit conduct as defined by 18 [U.S.C.] Section 2256(2)(A) and (B)." Finally, in a separate opinion following additional argument, the court ordered Miller to pay restitution to two identifiable victims in the amounts of $500 (plus $500 attorney's fees) and $1500 (plus $500 attorney's fees), respectively.

Miller's first issue is with his sentence. He argues that the five-level "pattern of activity" Guidelines enhancement he received was based on unreliable (and therefore insufficient) evidence of prior abuse, thus amounting to procedural error. But Miller fails to show how the district court erred—let alone, clearly erred[1]—in crediting a videotaped victim interview recounting the prior abuse.

Guideline § 2G2.2(b)(5) provides a five-level enhancement if "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor," where a "pattern of activity" means "two or more separate instances" of qualifying sexual abuse, or attempted abuse, of a minor. *See* U.S.S.G. § 2G2.2, cmt. n.1. Miller appears to concede that, if proven, the allegations of his abuses of JB and BG would qualify as a "pattern of activity," and argues only that JB's videotaped statements were not sufficiently reliable to prove those allegations. The

---

[1] A district court's factual findings at sentencing are subject to clear-error review. *See United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017).

standard of proof for such allegations is a preponderance of the evidence. *See United States v. Ramer*, 883 F.3d 659, 687 (6th Cir. 2018).

The district court did not clearly err in finding that JB's videotaped statements to investigators reporting multiple instances of qualifying sexual abuse by Miller adequately supported the enhancement by a preponderance of the evidence. The district court reviewed the PSR and videotaped interviews of Gardner's two children, BG and JB, which contained allegations that Miller and Gardner had sexually abused both of them on numerous occasions when they were minors, including at least one instance in which Miller attempted to rape JB. The court deemed JB's statements reliable, in part, because they were given in the context of a police investigation, which resulted in the indictment and conviction of Gardner for similar conduct. So long as those statements bear "some minimal indicia of reliability," they were properly considered by the district court. *See United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992) (en banc).

With only Miller's bare denial to the contrary, the district court did not err by crediting JB's statements as sufficiently reliable, considering that they were videotaped, provided in the context of an earlier police investigation, and corroborated in part by the statements of BG. Unlike written victim statements—which have themselves been found sufficient, *see, e.g.*, *United States v. Paull*, 551 F.3d 516, 527 (6th Cir. 2009)—the videotaped interviews allowed the district court to observe JB's demeanor and expressions and gauge her credibility. Moreover, the statements were made during an earlier, unrelated police investigation and concerned multiple abusers; that alone suggests a certain indicium of reliability. That showing is only bolstered by the fact that the statements resulted in the conviction of the children's mother, Gardner, for sexual battery of BG. Even though Gardner was convicted of conduct separate from Miller's alleged abuse, that JB's and BG's statements led to a conviction for similar conduct is an indication that their statements

are generally reliable.[2]  Finally, despite some discrepancies, that JB's statements were corroborated in part by BG's also serves as evidence of reliability.

Our prior cases underscore the point that context and corroboration can serve as indicators of the reliability of a victim statement used to enhance a sentence for a pattern of sexual abuse.  In *United States v. Pirosko*, for instance, we upheld a "prior activity" enhancement based on out-of-court letters submitted by the defendant's two daughters recounting abuses from more than a decade earlier.  787 F.3d 358, 373 (6th Cir. 2015).  Those letters were sufficiently reliable despite the long time-lapse, one author's earlier difficulties remembering the abuses, somewhat vague descriptions, and an arguably contradictory account, because the letters corroborated each other and were consistent with suspicions of the defendant's ex-wife.  *See id.* at 373–74.  Here too, the context of JB's statements supports the district court's reliability determination: they were corroborated by certain of BG's allegations and made during a separate police investigation which resulted in a conviction for similar conduct.  In addition, unlike the letters in *Pirosko*, JB's statements were videotaped, so the district court had the benefit of assessing reliability by examining demeanor and expression.

Miller's critiques of select statements and potential inconsistencies are not enough to show clear error.  Miller points to a single statement by BG that Miller did not rape him to refute JB's allegations that Miller sexually abused BG.  But there was an earlier statement by BG that Miller did sexually abuse him and multiple statements to that effect by JB.[3]  Miller may be unhappy with

---

[2] It is true, as Miller argues, that Gardner's conviction is not proof that Miller committed the alleged sexual assaults.  But the court did not rely on Gardner's conviction as proof of Miller's conduct, only as a further indicator that JB's statements recounting abuses by Gardner and Miller were reliable.

[3] In addition to the statements regarding Miller's sexual abuse of BG, JB recounted several instances of Miller's abusing her, including his attempts to rape her.

the district court's weighing of those perhaps-competing statements, but "[a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004). Miller also seizes on the district court's misstatement that JB heard Miller abuse BG twenty-five times. But Miller must show that the misunderstanding was material or "served as the basis for the sentence." *See United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990). He has not done so. Indeed, the district court expressly stated that it did not matter "[w]hether it was 25 or it wasn't," and the Government was required to prove only two instances of sexual abuse, not twenty-five. Finally, Miller argues that JB's statements are inherently unreliable because she has been "diagnosed with mental retardation/developmental disabilities." But, as the Government responds, mental handicaps do not, as a rule, disqualify a witness from presenting testimony. *See United States v. Phibbs*, 999 F.2d 1053, 1068–70 (6th Cir. 1993). The district court was free to take JB's mental disabilities into account in assessing her credibility, but once again, a reviewing court does not "redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *See Reid*, 357 F.3d at 582.[4]

In sum, the district court did not clearly err in finding by a preponderance of the evidence that Miller had engaged in a pattern of sexual abuse sufficient to trigger the enhancement.

Miller's next issue is with the district court's order of special terms of supervised release, claiming errors both procedural and substantive. As to procedure, however, the sentencing record

---

[4] Miller asserts for the first time on appeal and without any citation to the record that certain allegations of abuse by JB do not match up with the timing of Miller's relationship with Gardner. An argument made for the first time on appeal is subject to plain-error review, which requires a clear and obvious error that affected the fairness of the judicial proceedings. S*ee United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008). Miller has not met this burden, as he has identified no evidence in support of his assertion.

adequately reveals the court's rationale for imposing the special conditions of supervised release that it did. And Miller's valid waiver of appeal forecloses his substantive constitutional challenge.

Although a district court must generally state its "rationale for mandating special conditions of supervised release," where, as here, "the supporting reasons are evident on the overall record," and the condition is related to a proper purpose of probation, any error in failing to explain its reasoning is harmless error. *See United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001). At separate points during the hearing, the court considered, among other factors: the "vile" nature and sheer number of pornographic images Miller possessed, 18 U.S.C. § 3553(a)(1) (nature of offense); Miller's pattern of sexual abuse of minors, *id.* (history and characteristics of defendant); Miller's background as a victim of abuse himself, *id.*; Miller's need for "medical care," § 3553(a)(2)(D) (need for medical care or other treatment); Congress's intent in designating sexual crimes against children as extremely serious, § 3553(a)(5) (pertinent policy statement); the advisory Guidelines range, § 3553(a)(4); and the "need to avoid unwarranted sentencing disparities," § 3553(a)(6).

After considering these factors, the district court determined that "general and specific deterrence require that [Miller] be separated from society and separated from the internet for a significant period of time," and that the sentence imposed was "sufficient but not greater than necessary." Even if the district court can be faulted for not expressly mapping its rationale onto the special conditions it imposed, its rationale was plain, and the prohibitions on "loitering where minors congregate" and "possess[ing] material . . . containing sexually explicit conduct" are closely related to Miller's rehabilitation and public safety. Thus, Miller's procedural challenge fails. *See Kingsley*, 241 F.3d at 836.

Turning to his substantive challenge, Miller has through his plea agreement waived his right to argue on appeal that two of the special conditions of his supervised release are constitutionally overbroad. As we reaffirmed in *United States v. Sharp*, "a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." 442 F.3d 946, 949 (6th Cir. 2006) (citations omitted). Miller insists that his waiver is invalid because the district court did not satisfy its obligations under Rule 11 to determine that Miller understood its terms. *See* Fed. R. Crim. P. 11(b)(1)(N). But our cases make clear that there is no Rule 11 violation—and so, no reason to cast aside a waiver—where the district court "ascertain[s] that the defendant understands the terms of the plea agreement," by having the prosecutor accurately explain the terms of the waiver on the record, ensuring that the defendant has had time to review the agreement with counsel, and confirming with the defendant that he understands the terms of the agreement. *See Sharp*, 442 F.3d at 950–52; *see also United States v. Robinson*, 455 F.3d 602, 610 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Here, the district court instructed the prosecutor to outline the provisions of the plea agreement for the record, and in connection with the waiver she stated:

> In consideration of the provisions of the plea agreement, the defendant is waiving his right to appeal or collaterally attack the sentence with the following exceptions. He may appeal if under the following circumstances: His guilty plea was not knowingly, intelligently or voluntarily entered; the sentence imposed was procedurally unreasonable; the sentence imposed was greater than the sentencing guideline range calculated pursuant to paragraphs 9.1, 9.2, and 9.4 of this plea agreement; evidence was discovered after sentencing that called into question the propriety of the conviction entered or the computation of the sentencing guidelines; after sentence was imposed and the conviction entered there were changes made to the sentencing guideline, sentencing statutes or statutes of conviction that were expressly made retroactive and go to the issue of Defendant's sentence; may also appeal based on claims of ineffective assistance of counsel or prosecutorial misconduct; or if the government [] appeals or if the Court imposes a sentence above the statutory maximum.

That explanation was an accurate, and near-verbatim, description of the plea agreement's waiver provision. The court then asked Miller's counsel to confirm both that she had reviewed the entire plea agreement with Miller and that she believed him to understand all of her advice, which she confirmed. Finally, the court asked Miller to confirm that he had read, understood, and signed the agreement, all of which Miller confirmed. Thus, Miller's plea was knowing and voluntary. Because the substantive challenge to his special conditions of release does not fall within the waiver's exception for claims of procedural unreasonableness, Miller has waived this claim.

Miller's final issue is with the order of restitution. At bottom, he complains that the district court abused its discretion by awarding the restitution it did having only listed, but not actually considered, the appropriate *Paroline* factors. *See Paroline v. United States*, 572 U.S. 434, 460 (2014). There is, however, no reason to think that that the district court did not do its "best," as required by *Paroline*, 572 U.S. at 462, in reasonably considering the inherently imprecise *Paroline* factors and awarding restitution.

The district court not only listed the *Paroline* factors but clearly indicated that it considered and applied them, using the available information, for each of the two identifiable victims. It is difficult to know what else could be said, especially given the low amounts awarded, which hardly require a more robust explanation. As for its inclusion in the restitution award of very limited amounts for attorney's fees, the district court's *Paroline* analysis coupled with its review of documented attorney's fees provided sufficient basis for its order.

We AFFIRM the judgment of the district court.