File Name: 11a0593n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 09-5937

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 22, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| CESAR MEJIA-RUIZ, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: KEITH, GIBBONS, and WHITE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant–Appellant Cesar Mejia-Ruiz pled guilty to possessing a firearm while illegally in the United States. He appeals the 120-month sentence of incarceration imposed by the district court on the grounds that (1) the use of an interpreter who spoke Spanish rather than Kanjobal at sentencing violated Mejia-Ruiz's right to due process and to confront witnesses; and (2) the prosecutor improperly and repeatedly referred to Mejia-Ruiz's silence during the sentencing hearing, in violation of his right to remain silent. For the reasons discussed below, we affirm the sentence imposed by the district court.

I.

On July 11, 2008, Chattanooga police responded to a 911 call claiming that a Hispanic male with a gun was pursuing two Hispanic subjects. The police found Armando Francisco ("Francisco") and his wife Maria ("Maria") hiding outside the residence of Paula Neal. The Franciscos reported that they had been kidnaped at gunpoint in Oklahoma two weeks before. Minutes after finding the victims, Neal alerted officers to Mejia-Ruiz and identified him as the gunman who had been chasing the Franciscos. Police then apprehended Mejia-Ruiz.

In September 2008, a grand jury issued a seven-count superseding indictment against Mejia-Ruiz, charging him with kidnaping for ransom, forceful seizure, illegal entry into the United States, unlawful transportation of illegal aliens, unlawful possession of a firearm by an illegal alien, and possession of a firearm in furtherance of a violent crime. In February 2009, Mejia-Ruiz pled guilty to a single count, unlawful possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g).

The United States Probation Office then prepared its presentence report for Mejia-Ruiz. Pursuant to U.S.S.G. § 2K2.1(c)(1)(A), the report concluded that a cross-reference to U.S.S.G. § 2A4.1 should be applied in relation to the kidnaping offense, even though Mejia-Ruiz had not pled guilty to that count. The report subsequently calculated a total offense level of 38 and criminal history category of I. Mejia-Ruiz objected to the presentence report, contending that he did not commit the alleged kidnaping offense or physically restrain the victim. Based on these objections, the court concluded that an evidentiary hearing was necessary to determine whether there was sufficient evidence to support the report's determinations.

The government first called Armando Francisco; given that Francisco was not a native English speaker, his testimony was translated by a Spanish interpreter. Francisco testified that he and Maria Francisco ("Maria") moved to Oklahoma City in July 2008. In Oklahoma City, he met two Spanish-speaking men who offered him work. Francisco and Maria followed them to a house, where the men kidnaped both of them for approximately ten days, holding them in a bathroom. Francisco testified that the men, one of whom was Mejia-Ruiz, had guns and had demanded $10,000 for their release. According to Francisco, after ten days, both he and Maria were forced into a car at gunpoint and driven from Oklahoma to Chattanooga. The day after arriving in Chattanooga, Francisco said both victims were placed in another car. Mejia-Ruiz and another captor drove the car to a store and exited the vehicle; at that moment, Francisco and Maria escaped from the car and ran. Mejia-Ruiz pursued the Franciscos on foot, with a gun visible. On cross-examination, counsel

suggested that Francisco had actually entered Mejia-Ruiz's vehicle in Oklahoma voluntarily because Mejia-Ruiz had agreed to take him to Chattanooga. Francisco denied this charge and denied that he had fled the vehicle to avoid paying Mejia-Ruiz gas money.[1]

After testimony and arguments, the court made its factual findings. It concluded that "in isolation the Court would have difficulty accepting [Francisco's] testimony," in part because "he had a great deal of difficulty comprehending the questions asked for each side." However, the court saw no reason for doubting Francisco's motive and reasoned that had Francisco been fabricating the story, "then he would be exhibiting a higher degree of sophistication than we have seen." The court explained that if the standard of proof "was proof beyond a reasonable doubt, I think that the Court would give [Mejia-Ruiz] the benefit of the doubt." As this was not the standard at a hearing conducted during the sentencing stage, however, the court concluded that there was clear and convincing evidence that Mejia-Ruiz had kidnaped the Franciscos. The court therefore found that Mejia-Ruiz was involved in an effort to kidnap Francisco and concluded that the presentence report had properly calculated the total offense level, including the cross-reference increase. Noting that the guideline range for an offense level of 38 and criminal history category of I was generally 235 to 293 months, the court acknowledged that the statutory maximum offense for 18 U.S.C. § 922(g)(5) was 120 months' incarceration. The court then sentenced Mejia-Ruiz to 120 months' imprisonment. Mejia-Ruiz appeals this sentence.

II.

Mejia-Ruiz first argues that, because Francisco's native language was Kanjobal (a Mayan dialect spoken primarily in Guatemala and part of Mexico), his constitutional rights to due process

---

[1] In addition to Francisco, the government called Neal, who testified that she saw Mejia-Ruiz across the street from her house on the day in question and identified him to the police. The government also called Officer Diaz of the Chattanooga Police Department. Diaz testified that he responded to the call at the Neal house and interviewed Francisco. The defense stipulated that Francisco told Diaz the same story that he testified to at trial.

and to confront witnesses were violated when the court employed a Spanish interpreter to translate Francisco's testimony. During his testimony, Francisco expressed some difficulty in understanding certain questions asked by both the government and Mejia-Ruiz's counsel. After Francisco's testimony, the government clarified during arguments that Francisco's "native language" is Kanjobal and that "[h]e speaks Spanish as a second language." This linguistic barrier, Mejia-Ruiz argues, denied him an adequate opportunity to cross-examine Francisco.

Mejia-Ruiz concedes that he failed to object to Francisco's testimony in Spanish during the sentencing hearing. As a result, we only review this claim for plain error. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). "When reviewing a claim under a plain error standard, this Court may only reverse if it is found that (1) there is an error; (2) that is plain; (3) which affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002).

A.

The Supreme Court has explicitly held that the Due Process Clause applies to the sentencing process. *Gardner v. Florida*, 430 U.S. 349, 358 (1977). Similarly, this court has accepted—at least when reviewing a credibility determination in the immigration context—that "obvious misunderstandings based on translation mistakes" could serve as the basis for a due process claim. *Kaciqi v. Holder*, 349 F. App'x 58, 62 (6th Cir. 2009); *see also Ahmed v. Gonzales*, 398 F.3d 722, 727 (6th Cir. 2005). However, this court has accepted such translational claims only where the appellant "was prejudiced by interpretation or translation errors." *Id*. In *Amadou v. INS*, for instance, this court found that a party had been "deprived of his due process right to a full and fair hearing because of the incompetence of the interpreter." 226 F.3d 724, 726 (6th Cir. 2000). In *Amadou*, a variety of exchanges during the proceedings revealed that the translator was having difficulty understanding the witness and had incorrectly translated some of the witness's statements. *Id.* at 727. The court also found that the "record indicates that the interpreter's faulty translation

directly prejudiced [the petitioner]" because the immigration judge had found the witness not credible in part due to the witness's inconsistency and lack of clarity. *Id*.; *see also Ahmed*, 398 F.3d at 727–28 (finding asylum applicant was denied a fair hearing where the immigration judge made adverse credibility findings against in part based on misunderstandings of the applicant's oral testimony). Because we review Mejia-Ruiz's claim for plain error, he too must show prejudice in order to prove his substantial rights were affected. *United States v. Gabbard*, 586 F.3d 1046, 1051 (6th Cir. 2009) (noting the substantial-rights prong of plain error review requires a showing of prejudice).

In this case, Mejia-Ruiz overstates the degree to which language actually inhibited cross-examination. First, the entirety of Francisco's testimony suggests that, while Spanish was not his native language, he speaks the second language fluently. Though Francisco had some difficulty understanding some questions asked of him, the district court attributed the difficulty to Francisco's limited education, not to any linguistic barrier. Second, while Francisco was sometimes not able to comprehend a question asked of him, a simple rephrasing of the question by counsel corrected the misunderstanding and Francisco was able to answer.[2]

Moreover, Mejia-Ruiz was not harmed by the errors in translation here like the asylum seeker in *Amadou* was. The district court found that Francisco's difficulty with certain questions bore on the witness's credibility, which *helped* Mejia-Ruiz's case. The court explained that it would not find Francisco's testimony sufficiently cogent to prove beyond a reasonable doubt that Mejia-Ruiz kidnaped Francisco; given the lower standard of proof during a sentencing hearing, however, the court found it adequately persuasive. Mejia-Ruiz has not offered any evidence that he was harmed by the alleged difficulties in translation, and *Amadou* and other cases like it are distinguishable.

---

[2] For example, the following exchange took place during cross-examination: "Q. Mr. Francisco, what is your education? A. You mean, like, schooling? Q. School, yes. A. I only got to the fourth grade."

Because Mejia-Ruiz cannot show that a difficulty in interpretation prejudiced him during the sentencing hearing, we find that the sentencing court made no plain error affecting Mejia-Ruiz's due process rights.

B.

Mejia-Ruiz also argues that the use of a Spanish translator violated his constitutional right to confront Francisco. The government first responds by arguing that no right was violated because Mejia-Ruiz does not have a constitutional right to cross-examine a witness during a sentencing hearing. The Supreme Court has not yet decided whether the Sixth Amendment's Confrontation Clause applies to sentencing, *United States v. Fell*, 217 F. Supp. 2d 469, 486 (D. Vt. 2002), though broad language of this court's prior opinions suggest that it does not.[3] As the government concedes, however, most of our opinions dealing with the Confrontation Clause's application in sentencing proceedings only consider the admission of testimonial hearsay, not the right to cross-examine a testifying witness. Here, we need not answer definitively the questions of whether the Confrontation Clause applies at sentencing or whether it applies to the sort of claim made here, because Mejia-Ruiz has not demonstrated any infringement of a right to cross-examine.

The Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 407 (1965). Cross-examination is a "primary interest" secured by the Confrontation Clause; indeed, it

---

[3] On multiple occasions, this court has rather unequivocally stated that "the Confrontation Clause does not apply at sentencing." *United States v. Moncivais*, 492 F.3d 652, 665 (6th Cir. 2007); *see also United States v. Christman*, 509 F.3d 299, 304 (6th Cir. 2007); *United States v. Hamad*, 495 F.3d 241, 246 (6th Cir. 2007); *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005); *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). Other circuit courts have issued similarly broad language denying the Confrontation Clause applies during sentencing proceedings. *See, e.g.*, *United States v. Powell*, --- F.3d ---, 2011 WL 1797893, at *1 (4th Cir. May 12, 2011); *United States v. Dyer*, 589 F.3d 520, 532 (1st Cir. 2009); *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007); *United States v. Martinez*, 413 F.3d 239, 242 (2d Cir. 2005); *United States v. Navarro*, 169 F.3d 228, 236 (5th Cir. 1999).

"is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). But while "the Confrontation Clause guarantees an opportunity for effective cross-examination," it does not guarantee the right to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis omitted).

Here, however, Francisco unequivocally was available to Mejia-Ruiz, and Mejia-Ruiz had the full opportunity to cross-examine the witness. Mejia-Ruiz seems to imply that a linguistic barrier essentially made Francisco unavailable for cross-examination. Even assuming that Francisco's difficulty with Spanish created a genuine difficulty in cross-examining him, such difficulty did not rise to the level of a total deprivation of the opportunity to conduct a meaningful cross-examination, and no case law suggests this complication would amount to a constitutional violation.[4] In sum, Mejia-Ruiz has no claim under the Confrontation Clause, and the district court committed no error by allowing Francisco to testify in Spanish.

III.

Mejia-Ruiz also argues that the prosecutor improperly made repeated references to Mejia-Ruiz's silence, in violation of his Fifth Amendment right against self-incrimination. Mejia-Ruiz acknowledges that he failed to object to the prosecutor's statements during the sentencing proceedings, warranting plain error review. *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008). Plain error results from prosecutorial misconduct when the prosecutor makes improper comments that are so flagrant in context that they "undermine the fundamental fairness of the trial

---

[4] In his brief, Mejia-Ruiz also mentions the Court Interpreters Act ("CIA"), 28 U.S.C. § 1827, in apparent support of his Confrontation Clause claim. The CIA, however, "was not enacted to 'create new constitutional rights for defendants or expand existing constitutional safeguards'; rather, it was intended 'to mandate the appointment of interpreters under certain conditions and to establish statutory guidance for the use of translators in order to ensure that the quality of the translation does not fall below a constitutionally permissible threshold.'" *United States v. Johnson*, 248 F.3d 655, 661 (7th Cir. 2001) (quoting *United States v. Joshi*, 896 F.2d 1303, 1309 (11th Cir. 1990)).

and contribute to a miscarriage of justice." *United States v. Young*, 470 U.S. 1, 16 (1985). In the context of prosecutorial remarks made to a jury, this court has developed four factors to determine if the prosecutor's comments are so flagrant that they threaten fundamental fairness: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002) (internal quotation marks and citation omitted).

Here we initially note that the potential for prejudice to Mejia-Ruiz was minimal. The remarks in question were made to the judge during a sentencing hearing. While the prosecutor's remark that "[i]t's not a question of Mr. Mejia Ruiz's story, which, by the way, he never took the stand" was improper, it hardly amounts to constitutional violation.[5] The transcript evidences no prejudice based on the statement. The district court never mentioned Mejia-Ruiz's silence during its factual finding and instead focused almost exclusively on the credibility of the government's witnesses. The court was of course aware that it should not consider Mejia-Ruiz's silence. Because the court appears to have been unaffected by the government's statements, the first prong of the test does not weigh in Mejia-Ruiz's favor. As to the second prong—whether the conduct or remarks were isolated or extensive—the record indicates that only one statement made by the government improperly referenced Mejia-Ruiz's silence.

---

[5] Mejia-Ruiz points to two other prosecutorial statements that Mejia-Ruiz argues "obliquely referred to his silence." First, he flags the prosecution's remark that the testimony offered by witnesses "has not been controverted by anything from Mr. Mejia Ruiz." He also claims the statement "we haven't seen any evidence today that refutes Mr. Francisco's story" was an improper reference to his silence. Both remarks, however, only discussed the evidence adduced during the hearing, and neither referred to Mejia-Ruiz's decision not to testify. *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) ("'[G]eneral references to evidence as uncontradicted, while not recommended, may not reflect on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence." (quoting *Byrd v. Collins*, 209 F.3d 486, 534 (6th Cir. 2000)).).

The third and fourth factors—whether the remarks were deliberately or accidentally made and whether the evidence against the defendant was strong—also do not support Mejia-Ruiz. There is no evidence offered that the prosecution's improper remark was purposeful, and the singular, passing nature of the statement suggests it was accidental. The evidence marshaled against Mejia-Ruiz was also relatively strong. The district court found the statements of all government witnesses relatively credible; similarly, he found that Mejia-Ruiz's possession of a firearm tended to undermine his story that he had only been acting as a driver for Francisco.

Given the isolated nature of the government's single improper remark, the lack of effect that statement seemingly had on the district court's decision, and the evidence offered against Mejia-Ruiz during the hearing, Mejia-Ruiz has failed to show plain error. We therefore affirm the sentence imposed by the district court.

## IV.

For the foregoing reasons, we affirm the sentence imposed by the district court.