NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0503n.06

12-5723

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*May 21, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE WESTERN |
| | ) DISTRICT OF TENNESSEE |
| TAVIS MARTIN, | ) |
| | ) |
| Defendant-Appellant | ) |
| | ) |

BEFORE: MARTIN and COOK, Circuit Judges; GRAHAM, District Judge.*

GRAHAM, District Judge.  Defendant-Appellant Tavis Martin appeals the sentence of 120 months incarceration imposed following his plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1).  Martin argues that the trial court improperly restricted his cross-examination of government witnesses at the sentencing hearing in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution.  Defendant also appeals the imposition of a special condition of supervised release that he undergo treatment for a gambling addiction as directed by his probation officer.

I. History of the Case

Martin was arrested on August 25, 2010, based on the allegations of Torressa Thompson that Martin had raped her while

_____

*The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

threatening her with a handgun.  In the presentence investigation report ("PSR"), the probation officer recommended the application of the cross-reference provision in United States Sentencing Guidelines ("U.S.S.G.") §2K2.1(c), which instructs that "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense," then the guideline range of the other offense as determined under U.S.S.G. §2X1.1 (Attempt, Solicitation, or Conspiracy) is applied if the resulting offense level for the other offense is greater than the offense level calculated for the offense of conviction. See  U.S.S.G.  §2K2.1(c)(1)(A).  The application of  U.S.S.G. §2A3.1(a)(2), Attempt to Commit Criminal Sexual Abuse, combined with Martin's criminal history category of III, would ordinarily have resulted in a total offense level of 38, with a guideline imprisonment range of 292 to 365 months.  However, because the statutory maximum penalty for the §922(g)(1) offense was ten years, the guideline range in Martin's case was 120 months.  Martin objected to the facts recited in the PSR, claiming that his sexual activity with Torressa Thompson was consensual.  He also objected to the paragraphs in the PSR which applied the cross-reference provision.  Martin's version of the facts would result in a total offense level of 20, with a range of 41 to 51 months.

The district court held a sentencing hearing on June 13, 2012. Torressa Thompson testified that early on the morning of August 25, 2010, she had an argument with her boyfriend, Jamarious McCurdy.

Torressa, who was three months pregnant at the time, requested that he drive her to her mother's house, where she resided. Instead, he drove her a few blocks from his apartment, forced her out of the car and drove away. Torressa called her mother, Greta Thompson, on her cell phone, and started to walk toward a nearby gas station. Martin approached her from across the street and told her to stop. As she started to run, Martin grabbed her in a choke hold and held a silver gun to her head. When she started screaming, he told her to be quiet or he would kill her. He took her phone and dragged her into the back yard of an abandoned house across the street, where he engaged in vaginal intercourse with her. Martin then took her back to the street. At that point, McCurdy and the police, who had been called by Greta Thompson, arrived at the scene. Martin threw down the gun and was arrested.

Greta Thompson testified that around midnight on August 25, 2010, she received a phone call from her daughter, who stated that McCurdy had put her out of the car and that she was walking to the gas station. Her daughter started to scream for help, and then the call was disconnected. After unsuccessfully trying to reach her by phone, Greta called McCurdy and the police, and drove to the gas station. When she arrived at the scene, her daughter was dirty and teary, and stated that she had been raped.

The government also presented the testimony of Margaret McCallum of the Memphis/Shelby County Rape Crisis Center, who obtained a statement from Torressa concerning the rape. McCallum

conducted a physical examination of Torressa, during which she observed an abrasion consistent with rape, and obtained vaginal swabs for laboratory testing. The parties stipulated to a laboratory report which stated that vaginal swabs taken from Torressa contained sperm which matched Martin's DNA.

Martin called his fiancee, McKeisha Webb, as a witness. Webb testified that she was dating Martin in August of 2010, and that they had not had sexual relations for two to three months because Martin's uncircumcised penis would become irritated and would crack and bleed. Martin also relied on a letter from a doctor dated October 24, 2011, which stated that defendant had sought medical treatment in the form of antibiotics for an infection of his penis at the jail facility where he had been incarcerated since December of 2010.

The district court concluded that the government's witnesses were credible witnesses, and that the facts included in the PSR were correct. The court rejected Webb's testimony, noting her relationship with Martin. The court also concluded that Webb's testimony was not corroborated by the doctor's letter, noting that the letter related to Martin's medical condition over a year after the offense, and that there was no medical evidence about Martin's condition at the time of the offense. After addressing the statutory sentencing factors, the district court imposed a sentence of 120 months, the statutory maximum.

## II. Confrontation Clause Issues

Martin argues that the trial court improperly limited his cross-examination of government witnesses in violation of the Confrontation Clause. A trial court's evidentiary decisions are reviewed for an abuse of discretion. *United States v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004). However, because Martin did not raise his Confrontation Clause argument before the district court, we review the district court's rulings for plain error. *United States v. Baker*, 458 F.3d 513, 519 (6th Cir. 2006). To constitute plain error, "there must be error, (2) that is 'plain,' (3) and that 'affects substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)(quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). An error "affects substantial rights" when it "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. If these three conditions are met, an appellate court may exercise its discretion to address the issue if the error seriously affects the fairness or integrity of the judicial proceedings. *Johnson*, 520 U.S. at 467.

The Confrontation Clause protects a defendant's right to cross-examine the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974); *see also Vasquez v. Jones*, 486 F.3d 135, 143 (6th Cir. 2007)("[T]he Confrontation Clause affords the right to impeach a witness with his criminal record, subject to the trial court's discretion to impose reasonable limitations to prevent harassment and annoyance of the witness."). However, "trial judges

retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009). The Supreme Court has explained that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)(emphasis in original). In the trial context, "under the Confrontation Clause, a defendant must show that, had he been able to cross-examine a witness on an issue, [a] reasonable jury might have received a significantly different impression of [the witness's] credibility[.]'" *United States v. Faulkenberry*, 614 F.3d 573, 589 (6th Cir. 2010)(quoting *Van Arsdall*, 475 U.S. at 680); *see also Holden*, 557 F.3d at 704 (noting that "[t]he key issue is whether the jury had enough information to assess the defense's theory of the case despite the limits placed on cross-examination").

The government notes that this court has previously held that the Confrontation Clause does not apply to sentencing hearings. *See, e.g., United States v. Paull*, 551 F.3d 516, 527-28 (6th Cir. 2009); *United States v. Moncivais*, 492 F.3d 652, 665 (6th Cir. 2007); *United States v. Katzopoulos*, 437 F.3d 569, 573-76 (6th Cir.

2006). As we stated in *United States v. Mejia-Ruiz*, 433 F. App'x 455, 459 (6th Cir. 2011), most of those opinions addressed the admissibility of testimonial hearsay at sentencing hearings, not the right to cross-examine a testifying witness. We need not decide the question of whether the Confrontation Clause applies in the latter context, however, because, even assuming that the Confrontation Clause does apply, Martin has not demonstrated any infringement of his right to cross-examine witnesses.

Martin first argues that he was improperly denied his right to cross-examine Torressa Thompson concerning her prior misdemeanor conviction for a theft offense, shoplifting. The government opposed this line of impeachment, noting that shoplifting was not an offense where "establishing the elements of the crime required proving–or the witness's admitting–a dishonest act or false statement." Fed. R. Evid. 609(a)(2); *see United States v. Washington*, 702 F.3d 886, 893 (6th Cir. 2012)(shoplifting is not a crime of dishonesty or false statement)(citing *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990)). The district court agreed with the government's position and disallowed this line of questioning.

Adherence to Rule 609(a)(2) was not required in this case, as the Federal Rules of Evidence do not apply to sentencing hearings. *See* Fed. R. Evid. 1101(d)(3); *United States v. Christman*, 509 F.3d 299, 304 (6th cir. 2007). But the district court's reliance on Rule 609(a)(2), even if erroneous, did not deprive Martin of any meaningful cross-examination. The rationale behind Rule 609(a)(2)

is that crimes of stealth such as theft and shoplifting "have little bearing on a witness's character for truthfulness." *Washington*, 702 F.3d at 893; *see also United States v. Barb*, 20 F.3d 694, 696 (6th Cir. 1994)(conviction under worthless check statute "is not, as a matter of law, a conviction involving dishonesty and adds nothing to the factfinder's ability to judge the credibility or propensity for truthfulness of a witness"). Likewise, there is no evidence in the record suggesting that Torressa's conviction for misdemeanor shoplifting was a crime involving dishonesty or false statement, or that it was relevant to her credibility as a witness.

Martin relies on *Vasquez v. Jones*, 496 F.3d 564 (6th Cir. 2007). That case is distinguishable. In *Jones*, we held that the state court's refusal to permit defendant to impeach the hearsay statement of a nontestifying witness introduced at trial with evidence of the witness's prior convictions resulted in prejudicial error under the Confrontation Clause. *Id.* at 575. Here, the district court, the trier of fact at the sentencing hearing, was made aware of the shoplifting conviction by defense counsel, and justifiably concluded that it was not relevant for impeachment purposes. Martin also argues that it was unfair to deny him the right to cross-examine Torressa Thompson concerning her shoplifting conviction, while permitting the government to ask Webb, the defense witness, whether she had ever been convicted of a crime, to which she responded, "Driving while license suspended." Sentencing

Hrg. Tr. p. 100. Yet, defense counsel raised no objection to this inquiry. The district court made no reference to this conviction in its evaluation of Webb's credibility as a witness.

Although noting that the question would have no probative effect, the district court did permit defense counsel to ask Torressa if she had ever been arrested, and she responded, "Yes." Sentencing Hrg. Tr. p. 56. Defense counsel was also permitted to thoroughly cross-examine Torressa concerning the events surrounding the rape and Torressa's previous statements. We cannot say that the district court might have received a significantly different impression of her credibility had it permitted cross-examination concerning her shoplifting conviction, or that the district court's ruling affected the outcome of the sentencing hearing.

Martin also contends that the district court improperly precluded him from cross-examining Greta Thompson regarding her opinion of Torressa's boyfriend, Jamarious McCurdy. On direct examination, counsel for the government asked Greta if she liked McCurdy, but then withdrew the question. Sentencing Hrg. Tr. p. 61. On cross-examination, Greta stated that she didn't care for McCurdy, and that she "didn't really care for a lot of his ways." Sentencing Hrg. Tr. p. 67. When defense counsel asked her to elaborate on what those ways were, the government objected on the ground that the question was outside the scope of direct examination. Defense counsel acknowledged that the government had withdrawn the question, and the district court correctly ruled that

the question was outside the scope of direct and was not relevant. Sentencing Hrg. Tr. p. 67. Defense counsel made no argument as to why the witness's opinion of McCurdy had any bearing on whether Torressa Thompson was raped by Martin. In addition, the district court permitted the cross-examination of Torressa Thompson concerning the difficult relationship she had with McCurdy, who became argumentative when he was drinking, and the fact that she had previously called the police on one such occasion. Sentencing Hrg. Tr. pp. 35-37. Any further cross-examination of Greta Thompson concerning that subject would have been cumulative, and the district court's limitation of the cross-examination of Greta Thompson did not deny Martin any confrontation rights.

Lastly, Martin notes that in discussing the evidence presented at the hearing, the district court stated that "the law presumes that each witness has attempted to and has, in fact, testified to the truth unless it is demonstrated to [the] contrary." Sentencing Hrg. Tr. p. 119. This statement was erroneous. *See United States v. Maselli*, 534 F.2d 1197, 1202-03 (6th Cir. 1976)(holding that it was error to give a jury instruction concerning a legal presumption of the truthfulness of witnesses). Martin does not explain how this isolated statement by the district court denied him a right to confront or cross-examine witnesses. Despite the confusing reference to a presumption of truthfulness, it does not appear that the district court later applied any such presumption in evaluating the credibility of the witnesses. The above statement was the

court's only reference to a presumption of truthfulness. Following this statement, the district judge noted that "the testimony was by and large not in conflict[.]" Sentencing Hrg. Tr. p. 119. The district judge then stated that "we make decisions based in evidence" and "we don't disregard anybody's evidence, we evaluate it all." Sentencing Hrg. Tr. pp. 119-20. The district judge then engaged in an extensive explanation as to why he found the testimony of the government's witnesses to be credible. He found the circumstances to be consistent with rape, and noted the corroboration of Torressa Thompson's testimony by expert and testimonial evidence. Sentencing Hrg. Tr. pp. 120-24. The judge explained that Webb, the defense witness, was "in love with the defendant and is not a credible witness[.]" The district court further found that Webb's testimony concerning Martin's physical problems was not supported by any contemporaneous medical evidence. Sentencing Hrg. Tr. pp. 124.

In summary, we find no error that affected Martin's substantial rights or the outcome of the district court proceedings.

### III. Special Condition of Supervised Release

Martin also raises as error the inclusion in the written judgment of a special condition of supervised release concerning treatment for a gambling addition at the direction of the probation officer, because the district court said nothing about this condition in pronouncing the oral sentence in court. This court

has not yet decided whether the trial court must announce special conditions of supervised release at the sentencing hearing. *See United States v. Swanson*, 209 F. App'x 522, 524 & n.3 (6th Cir. 2006). We need not decide this issue here. The government concedes that the district court's failure to orally impose the special condition constituted an abuse of discretion in this case, and asks that this case be remanded to the district court for amendment of the written judgment to conform with the oral pronouncement of the conditions of supervised release.

## IV. Conclusion

In accordance with the foregoing, the district court's sentence is affirmed in part and reversed in part, and this case is remanded to the district court with instructions to amend the written judgment to conform with the oral pronouncement of the special conditions of supervised release.