NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0238n.06

No. 22-3792

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

May 25, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| DYLAN T. FLANIGAN, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; BATCHELDER, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Dylan Flanigan pleaded guilty to possessing child pornography. He appeals his 170-month sentence, arguing that the district court improperly applied a five-level "pattern of activity" increase to his offense level under United States Sentencing Guidelines (USSG) § 2G2.2(b)(5), which applies if the defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." He contends that a preponderance of the evidence did not support the conclusion that he engaged in a pattern of activity because his sister did not give live testimony, and the statements she made to FBI investigators were uncorroborated and therefore unreliable. Flanigan further argues that because he was also a minor when the alleged abuse occurred, the pattern of activity enhancement should not apply. Because the sentencing court properly applied the enhancement, we **AFFIRM** Flanigan's sentence.

## I. BACKGROUND

In November 2018, the Brunswick Police Department connected to a computer at Flanigan's residence using peer-to-peer software and downloaded digital files containing child pornography. In February 2019, FBI investigators executed a search warrant, and seized several devices containing child pornography at Flanigan's home. As part of the investigation, agents interviewed Flanigan's younger sister, who disclosed that from the time she was four or five years old until she was seven, Flanigan had come into her room at night and molested her. She said that Flanigan called it "playing pretty," and that he had touched her vagina with his fingers, and on one occasion penetrated her vagina with his penis. Flanigan is 11 years older than his sister, so this conduct was alleged to have occurred from when he was about 15 or 16 years old until he was 18, at which point Flanigan moved out of the family home.

In 2022, Flanigan pleaded guilty pursuant to a written plea agreement to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He stipulated to a base offense level of 18 under USSG § 2G2.2(a)(1), and to several special offense characteristic increases for material involving a prepubescent minor, distribution, material portraying sadistic or masochistic conduct, use of a computer, and possessing more than 600 images. But he reserved the right to object to the pattern of activity enhancement, and the Government agreed to recommend a three-level reduction for acceptance of responsibility under USSG § 3E1.1. The probation office prepared a presentence investigation report (PSR), which it later revised, calculating a total offense level of 35 after including the pattern of activity increase and the three-level reduction for acceptance of responsibility. Based on a criminal history category of I and an offense level of 35, the Guidelines range for imprisonment was 168 to 210 months.

In a sentencing memorandum, Flanigan objected to the pattern of activity enhancement, and submitted that his total offense level should be 30, rather than 35, leading to a sentencing range of 97 to 121 months' imprisonment. Flanigan's sentencing hearing began on September 2, 2022, via Zoom, but had to be continued to September 7, 2022, because of technical difficulties.

When the hearing reconvened, the court noted Flanigan's objection to the pattern of activity enhancement on the ground that he never engaged in inappropriate or illegal sexual conduct with his sister. The court then heard argument from the parties, and testimony from the FBI agents who had interviewed Flanigan's sister. The Government explained that the sister had first come forward with allegations of childhood sexual abuse after the search warrant issued in Flanigan's case. Summarizing what the sister had told the FBI agents, the Government recounted that she "did not disclose it at the time it was happening" because Flanigan "was the one of the family who was actually nice to her. She didn't want to get him in trouble," and because she "wasn't really sure if she was doing wrong, if it was right or wrong." She ultimately disclosed the abuse when she learned Flanigan might live with their mother when he was released from custody. She often visited their mother with her young children, and she was afraid to bring them around Flanigan "because she knew what he had done to her as a child." So, Flanigan's sister told their mother: "If you take him in I am not bringing the kids over, because this is what he did to me as a child." Prior to that disclosure, Flanigan's sister had told only a friend about the abuse.

The Government explained that FBI Agent Cappella had interviewed the sister about the abuse allegations in 2019 after the search warrant had been executed in the case, and that Agent Cappella and Agent Rao had interviewed her again before the sentencing hearing had reconvened in September 2022. The agents did not interview Flanigan's mother about the sister's disclosure because she had passed away. At the sentencing hearing, Agent Capella reiterated the sister's

allegations that "from the age of 4 or 5 until she was about 7 years old," Flanigan would "come into her room and would molest her[.]" Flanigan "would touch her vagina with his fingers, and at one point he had penetrated her vagina with his penis." Agent Rao testified that the sister had later confided in her nephew and her fiancé about the abuse, and also had a "direct conversation with Mr. Flanigan's wife . . . where that disclosure was made."

Flanigan argued that the pattern of activity enhancement should not apply because his sister's statements were neither credible nor reliable and because he was a minor at the time of the alleged conduct. Flanigan contended that, at most, "the evidence [was] 50/50" and "the evidence in this case doesn't rise to the level of a preponderance in an effort to apply this enhancement."

The district court disagreed, holding that there were "many indicators of reliability" as to the sister's statements. The court explained that "[m]ost often children of the age 4 to 7 don't ever disclose that they're molested for myriad of reasons," but "then as time goes on, . . . it comes up that something occurs that triggers this recollection[.]" The court reasoned:

> [I]t makes perfect sense that if your sister had children and they were visiting your mother and she thought that you were going to be living in the home[,] that she would tell her mother that she wouldn't bring her kids over if you were there because of what happened. And that kind of cascaded into all this information being out there to other people in your family, your wife and other people that were told what occurred.

The court found by a preponderance of the evidence that Flanigan was responsible for sexually abusing his sister, applied the five-level enhancement for a pattern of activity, and sentenced Flanigan to a within-Guidelines sentence of 170 months' imprisonment. This timely appeal followed.

## II. ANALYSIS

We review sentencing decisions under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). "To determine whether a district court abused its discretion,

we look to whether the sentence is reasonable. Sentences must be both procedurally and substantively reasonable." *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015) (citations omitted). Whether a district court properly applied a sentencing enhancement under the Guidelines is "a matter of procedural reasonableness." *Id.* With regard to procedural reasonableness, we defer "to the sentencing court's factual determinations unless clearly erroneous but review[] interpretations of the [G]uidelines *de novo*." *United States v. Paull*, 551 F.3d 516, 526 (6th Cir. 2009).

The five-level pattern of activity enhancement applies "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor[.]" USSG § 2G2.2(b)(5). The application notes add that a pattern of activity means "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." USSG § 2G2.2 cmt. n.1. "The applicability of the pattern-of-abuse enhancement is a factual determination that the sentencing court need find only by a preponderance of evidence." *United States v. Berringer*, 393 F. App'x 257, 262 (6th Cir. 2010) (citing *United States v. Sexton*, 512 F.3d 326, 330 (6th Cir. 2008)).

Flanigan does not dispute that the conduct his sister alleged, if proven, would qualify as sexual abuse or exploitation of a minor for purposes of the enhancement. Instead, he argues that the Government failed to prove the alleged sexual abuse occurred by a preponderance of the evidence. He challenges the district court's reliance on the sister's statements because she did not give live testimony, and he contends the statements were unreliable because they were not corroborated by another witness or other evidence. He also argues that the enhancement should

not apply because he himself was a minor at the time of the alleged sexual abuse. We address each argument in turn.

*First*, as we explained in *Paull*—a case involving a challenge to the same pattern of activity enhancement under USSG § 2G2.2(b)(5)—a sentencing court may consider and rely on hearsay evidence when deciding whether to apply a Guidelines enhancement.[1] 551 F.3d at 527-28. "So long as the information has '*some* evidentiary basis' to satisfy a 'minimal indicium of reliability,' the district court can consider it without regard for the rules of evidence." *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (quoting *United States v. Silverman*, 976 F.2d 1502, 1504 (6th Cir. 1992)). Reliability is a "relatively low hurdle." *United States v. Moncivais*, 492 F.3d 652, 659 (6th Cir. 2007) (quoting *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995)). "And on top of that, we review those reliability decisions under the highly deferential, clearly erroneous standard." *Armstrong*, 920 F.3d at 398.

Thus, in *Paull*, we upheld the district court's application of the pattern of activity enhancement when it relied on a letter written by a friend of the defendant's son, alleging that the defendant had molested him in the 1980s, around 20 years earlier. 551 F.3d at 521, 527. Rejecting the defendant's argument "that the facts were legally insufficient to support the district court's holding," *Paull* explained that the letter made "specific allegations, including when the activity started, the time of day and year (evenings during football and basketball season, when Paull would be free from his other family members), and was corroborated by family members of the victim." *Id.* at 527. The district court determined the letter was reliable, and credited its "specifics over

---

[1] Although we have definitively ruled that the Confrontation Clause of the Sixth Amendment does not prohibit the admission of testimonial hearsay at a sentencing hearing, we have left open the question of whether the Confrontation Clause gives a defendant the right to cross-examine a testifying witness at a sentencing hearing. *See, e.g.*, *United States v. Martin*, 526 F. App'x 643, 646 (6th Cir. 2013). We need not resolve this question here.

Paull's generalities." *Id.* We affirmed, explaining that "disputed facts do not make evidence insufficient," and the defendant's denial of the allegations did not make it clear error for the district court to find by a preponderance of the evidence that he did molest the victim. *Id.*

Here, the district court did not clearly err in determining that the statements of Flanigan's sister were reliable or in crediting her version of the events. The sister's allegations remained unchanged, consistent, and specific over the course of two separate interviews with FBI investigators—one in 2019 and one in 2022. Although her allegations were not corroborated by other family members, that is because she never disclosed Flanigan's abuse to anyone in her family until after the FBI began investigating Flanigan. The district court reasoned that "[m]ost often children of the age 4 to 7 don't ever disclose that they're molested for myriad of reasons," and that it made "perfect sense" that the sister decided to come forward when she did, because she was concerned that if Flanigan moved in with their mother, her children would interact with him when they visited. "[W]e will reverse the district court's finding of reliability only if it leaves us 'with the definite and firm conviction that a mistake has been committed.'" *Armstrong*, 920 F.3d at 398 (quoting *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003)). The district court did not clearly err in this case.

*Second*, Flanigan argues that testimony or other corroborating evidence is required to support the application of the pattern of activity sentencing enhancement, citing cases in which more than one witness testified about the defendant's past sexual abuse. *See, e.g.*, *United States v. Wright*, 464 F. App'x 475, 478, 482-84 (6th Cir. 2012) (affirming pattern of activity enhancement where two witnesses testified about the defendant's abuse 40 years earlier). But Flanigan provides no authority suggesting that corroboration of this nature is *required*. Indeed, *Paull* affirmed the application of the enhancement based on a letter and the probation officer's

summary of interviews with family members corroborating its contents. 551 F.3d at 521, 527. While it would have been preferable for the record before the sentencing court to have included further corroboration, we cannot say that the court clearly erred in finding that the sister's statements to the FBI agents about Flanigan's past abuse were reliable.

*Third*, we address Flanigan's argument that the pattern of activity enhancement should not apply because he was a minor when the alleged abuse is said to have occurred. The plain language of USSG § 2G2.2(b)(5) does not exclude minor-on-minor conduct. It provides only that "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation *of a minor*, increase by 5 levels." *Id.* (emphasis added). "Sexual abuse or exploitation" is defined in the Guidelines' application notes as including conduct described in nine federal statutes, state law offenses that would qualify as offenses under those federal statutes had they occurred within a federal jurisdiction, or an attempt or conspiracy to commit any of those offenses. *Id.* cmt. n.1. For example, 18 U.S.C. § 2241 criminalizes "aggravated sexual abuse," which includes actual or attempted sexual acts with minors under 12 years old. But none of these enumerated federal statutes limits coverage to offenders that are over 18.[2]

The other circuits that have considered the question of whether USSG § 2G2.2(b)(5) excludes minor-on-minor conduct have concluded that it does not. For example, the Second Circuit held "that sexual abuse or exploitation of a minor undertaken by a defendant who was a juvenile at the time of the incident is properly considered in applying the § 2G2.2(b)(5) pattern enhancement." *United States v. Reingold*, 731 F.3d 204, 225 (2d Cir. 2013). The Eleventh Circuit

---

[2] As another example, 18 U.S.C. § 2243 provides penalties for (among other things) the sexual abuse of a minor, which includes actual or attempted sex acts with minors over the age of 12 but under the age 16 when the victim is four or more years younger than the offender. This provision would apply, for example, to a 17-year-old who "knowingly engages in a sexual act" with a 12- or 13-year-old.

agreed, holding that "[n]othing in § 2G2.2(b)(5) limits its application to adult conduct. Our analysis therefore leads us to conclude that acts committed by defendants when they were minors may support a 'pattern of activity' enhancement under USSG § 2G2.2(b)(5)." *United States v. Alberts*, 859 F.3d 979, 984 (11th Cir. 2017). And the Third and Eighth Circuits have summarily affirmed the application of this enhancement based on the defendant's conduct as a minor against other minors. *See United States v. Olfano*, 503 F.3d 240, 243 (3d Cir. 2007); *United States v. Woodard*, 694 F.3d 950, 953-54 (8th Cir. 2012), *overruled on other grounds by United States v. Gauld*, 865 F.3d 1030, 1032 (8th Cir. 2017). We find these decisions persuasive, and Flanigan does not point to any authority supporting a contrary position or offer a viable basis for distinguishing the facts of his case. The district court did not err in applying the pattern of activity enhancement to conduct that occurred when Flanigan himself was a minor.

## III. CONCLUSION

For all these reasons, we **AFFIRM** Flanigan's sentence.